Tilghman C. J.
This is an appeal from the Orphan’s Court of Cumberland county. James Carothers deceased, died intestate, seized iu fee of three tracts of land, one called “the old Homestead tract,” containing 152 acres, and another called “ the Locust Thicket tract,” containing 330 acres. The third it is not material to mention. ITe left six children, of whom one was a son called James, and the other five, daughters. After the father’s death judgment was obtained against the son, and an execution issued which was levied on “ the Locust Thicket tract,” in consequence of which the sheriff sold and conveyed to James Grayson by deed dated 8th June 1805, one undivided sixth part of that tract, being the interest which James Carothers the son had therein. On the 5th November 1805, James Carothers conveyed to George Kline all his estate in Cumberland county *207 and elsewhere, in trust for the support and maintenance of his wife and children. On the 13th May 1807, James Carothers -was discharged under the insolvent law, and assigned to Charles Bravend and George Kline all bis estate in trust for his creditors. After these proceedings, the real estate of James Carothers the father was divided into three parts, of which each of his three tracts of land made one, by order of the Orphan’s Court; and each was valued, in order that *those children who took the land, might pay to the others their proportion of On the 2d Septemher 1809, two petitions were presented to the Orphan’s Court, one by James Grayson, praying that he might be allowed to elect “ the Locust Thicket tract,” on his entering into recognizance and giving security to pay the proportion due to the several children; the other by George Kline, praying that he as assignee of James Carothers the son, under the deed of trust of 5th November 1805, might be permitted to elect “ the old Homestead tract,” on his entering into recognizance and giving security, &c. The court rejected both these petitions, being of opinion that the right of election, which on the father’s death belonged to the son, had been devested in 'consequence of the transactions before mentioned, and passed over to the eldest daughter. From that decree of the Orphan’s Court an appeal was made to this Court.
This case depends on the act of 19th April 1794. It is directed by the twenty-second section, that if the land cannot be divided among the children, without prejudice to the whole, it shall be appraised, and the whole adjudged to the eldest son, if he will accept it, and to the other sons successively, on the neglect or refusal of the oldest to accept it, and on the neglect or refusal of all the sons, then to the eldest daughter and to the other daughters successively, as in the case of the sons, the child who accepts paying to the other children their respective proportions of the appraised value, or giving security, &c. But if the lands will conveniently accommodate more than one child, the court may settle the same on as many of the children (preference being always given to the eldest sons) as it will accommodate without prejudice to the whole, those children to whom the estate shall be so assigned, paying or giving security to pay to the other children, their proportions of the value thereof according to an appraisement tó be made by order of the court.
It is the object of the law, to make an equal division among all the children, with regard to the value of the estate. *208 But as the right of choice must be given to some, where the land cannot be divided amongst all, it was judged most reasonable to give a preference first to the male sex and next to priority of birth. If the eldest son should alien to a stranger His interest in his father’s estate, it is *very clear that he can no longer pretend to an election, because he has no longer a right to any part. Whether his alienee would succeed to the right of election, I think it unnecessary in this case to determine. I shall therefore give no opinion on that point. But let us consider on what grounds, the several petitioners, Grayson and Kline, can support their pretensions. Grayson purchased from the sheriff all James Carothers’ interest in “ the Locust Thicket tract.” What was this interest? It was a right to one undivided sixth part subject to the provisions of the act of assembly; that is to say, unless that tract should be elected by James Carothers and security be given by him to pay their shares to the rest of the children, the right of electing would be given to one of the other children, and in that case, Grayson, instead of land, must take a sixth part of the money at which the tract was valued. This was all the right which the sheriff could legally convey to Grayson. But James Carothers had a right to an undivided sixth part of all his father’s estate, subject to the provisions of the act. How then can Grayson, who only purchased the right to an undivided sixth of one tract, pretend to the whole right of election of James Carothers the son? It may be asked what then is to be done? What becomes of the son’s right of election, after this levy and sale by the sheriff? If the son had retained all the rest of his right, and had made no conveyance to other persons, I can see no objection to his taking the “ Locust Thicket tract,” if he chose to take it, for then he might confirm to Grayson the title to one undivided sixth part, and all would be right. But the case stands very differently. He has made two conveyances of all his right, one to Kline, in trust for his own family, and another to his assignees under the insolvent law. It is very doubtful, whether the conveyance to Kline can be supported against'the assignment to his creditors. A conveyance in trust for the family of a man, who soon after becomes insolvent, is very suspicious to say the best of it. Now the assignees for the creditors do not come forward to ask any right of election; and those petitioners who do come forward draw different ways. One wants one tract, the other another. If both were to be gratified, those persons who claim under the son would take two *209 divisions of the father’s land; * whereas the son himself, if he had made no alienation, would have been entitled to but one.
Under all these circumstances, the son having parted with all his right, and the petitioners who claim under him not agreeing in their choice, and the assignees in trust for the creditors not wishing to interfere in the business, I am of opinion, that the Orphan’s Court were right in rejecting both the petitions, and in decreeing the first right of election to the eldest daughter.
Ye ates J.
The statement of facts has been minutely detailed by the Chief Justice. The true construction of the twenty-second section of the act of assembly passed on the 19th April 1794 must govern our decision on this appeal. It is provided thereby, that where any estate in lands eanT not be divided amongst the children, or widow and children of the intestate, without prejudice to or spoiling of the whole, a just appraisement shall be made thereof; and thereupon the Orphan’s Court may order the whole to the eldest son, if he shall accept it, or any of the other sons successively, upon the eldest son’s neglect or refusal, or if there be no son, or all the sons neglect or refuse, then to the eldest daughter of the said intestate, and on her neglect or refusal to any other of the said daughters, in the same manner successively, he, she or they paying, &c. But if it shall appear, that the real estate of any intestate will accommodate conveniently more than one child, the Orphan’s Court may settle the same on as many of the children (preference being always given to the eldest son) as it will accommodate without prejudice to or spoiling of the whole; and if there be no sons, then to so many of the daughters as the same will accommodate as aforesaid, the said children paying, &c.
The first branch of this section pursues the old intestate act passed in the time of Queen Anne ; and it is admitted by the counsel on both sides, that the practical construction under it, has been to extend the privilege of election granted to the eldest son, for the benefit of his alienee, when he has conveyed voluntarily his whole undivided interest to spch alienee. It is said to be within the equity though not within the words of the law. It would certainly be a more strict adherence to the letter of the act, that the eldest son should if possible in the Orphan’s Court, and accept the *lands, which act would enure for the benefit of his grantee. But I can see no solid ground of distinction between such voluntary conveyance of the whole interest of *210 the son, and a sheriff’s deed divesting him of his entire right by operation of law for the payment of his debts. His share of the lands may be seized in execution and sold, and his interest in the land would wholly be extinct, with every privilege appertaining thereto, which the debtor himself had at the time of the judgment obtained againsthim. I have seen many releases from children to strangers of their undivided right- in the real estate of their father who had died intestate, but never'have seen a single one granting the right of preference therein by express words. This privilege is confined to the sons in the first instance, and to the daughters in the next place, according to the priority of their several births, on the ground of their supposed interests in the lands, the legislature contemplating that the lands would be appraised at their full value, and that the fullest justice would be done to the common offspring. And it cannot be asserted with the smallest degree of plausibility, that a sale by any one child can take from another child entitled to elect, his right to take the whole or any part of the lands as the event might turn out at the valuation. The equal spirit of the whole law forbids the idea of a son or a daughter entitled to a preference, where the real estate will accommodate more than one child, that either of them should make two elections, and consequently no right of such gross inequality could be derived under them. Some fixed principle then must be adopted in the case of a child so entitled, selling a portion of his interest in the land to strangers, to regulate the conduct of the Orphan’s Court in such cases. It cannot depend on the priority of the sales, or the relative value of the different portions sold, Here Grayson the sheriff’s vendee offered to take the tract of 330 acres sold to him at the valuation; and Kline as trustee under the voluntary conveyance made for the use of Maria Carothers, the wife of the son, offered to take the 152 acres and 54 perches. They cannot both be gratified in their choice, because this would work manifest injustice to the daughters; and the consequence therefore necessarily must be, that the right of preference claimed under the son is extinguished and gone. No just line of distinction can be *drawn between the two applicants; and the result must be, that Isabella Noble the eldest daughter is entitled to the preference, in my view of the subject.
Grayson and Kline from their relative rights are compelled to disagree in their election, and a double choice under the son’s privilege is wholly incompatible with the general interests of the family. The court cannot prefer the one to the *211 other according to any known rule, and are relieved from the necessity of judging of the validity of a voluntary deed which may possibly defeat or delay creditors, and the cases are thus stripped of all their difficulties.
I concur in opinion, that the decree of the Orphan’s Court be affirmed.
Brackenkidge J.
I can take no distinction between a voluntary sale by James Carothers, and a sale by operation of law ; and had the levy by the sheriff been on the one-sixth of the whole interest of James Carothers in the whole estate, as I had at first apprehended it to be, it would have been my opinion that a right of election to take at a valuation the remaining five-sixths of any one of the three several tracts, would have arisen to the alienee James Grayson, the purchaser at the sheriff’s sale. But James Carothers retaining in him the one-sixth in each of two several tracts, one of which he might elect to take at the valuation, cannot be said to have divested himself of this right by the alienation; and so did not pass to the alienee the right to take.
The assignment in trust to Kline was subject in the nature of it to the payment of debts; and these must be paid before any right of taking at a valuation could arise; and the payment of these must extinguish the trust, their payment being the sole object. The same in the case of the assignment under the insolvent debtor’s act. The debts being satisfied, there is nothing any longer covered by the assignment, nor any interest in the assignees; so that neither of these sets of trustees can take, nor cau James Carothers himself take in the mean time, having assigned his whole interest. The next eldest daughter then might seem to come in according to the judgment of the Orphan’s Court. Non constat that James Carothers after the debts are paid will have any interest in him to entitle him to elect at all; and *that there will be anything in him which a recognizance could bind.
Decree confirmed.
[Cited in 6 S. & R. 4; 1 Asli. 367. The query of the Chief Justice in Kline v. Grayson—whether the alienee of the eldest son of one who died intestate is entitled to the first choice of the estate at the valuation made in proceedings in partition in the'Orphan’s Court?—was decided in the affirmative in Ragan’s Estate, 7 Watts, 441.]