The opinion of the court was delivered by
Gibson, C. J.
Notwithstanding the recognition of the assize off nuisance as an existing remedy in Livesay v. Gorgas, (2 Binn. 192,) it has incidentally been suggested that it is still not too late to discard it. I certainly have not been in favour of reviving obsolete forms, which, from the disuse of them by our forefathers, might well be considered as having been rejected at the settlement of the province. It is, however, too late to make á stand against them now, it having been established, by repeated decisions of this court, that all common law actions which have not been abolished by the legislature, are in force here-precisely ds they are in England; and, although no one is more sensible of the inconvenience of this, of which the case before us is a pregnant instance, yet I would be the last to .-shake what has been as firmly established as a train of decisions by the court in the last resort can establish any thing. If the principle is not to be considered as settled by Livesay v. Gorgas, Lisle v. Richards, (9 Serg. & Rawle, 323,) and Witherow v. Keller, (11 Serg. & Rawle, 271,) we have no certainty for any thing that is not backed by an act of the legislature. This being so, we have nothing left for it but to adapt the action to modern use, by purging it of its subtleties in mere matters of form, without presuming, however, to meddle with essentials. The ground on which it has been recognised is, that it was all along a living remedy, although dormant; and, like the man who awaking from a tranee of twenty years in the Catskill mountains, was so altered that on returning to his- native village his former acquaintances did not know him, the assize of nuisance is to be received with the same modifications in practice which time has impressed on- the forms of our other actions. It would be a sad and sickening task to take it up now just as it was'two hundred years ago,.when the English eourts laid it down, without extending to it the benefits of modern practice, or of the statutes of jeofails, or even our own act of assembly for the amendment of slips in pleading. And this leads to the first of the few errors which I shall notice in detail.
It is alleged that the recognitors ought to have been summoned *212 and sworn, according to the <( Act directing the mode of selecting and returning'jurors.”
If there is any distinctive peculiarity in this action, it is in the mode of trial. The act of assembly is inapplicable fo it, because' the recognitors are not jurors; nor are their duties analagóus to those of jurors. In the course of the proceedings, issues may'be joined on points collateral to the issue, and these they are incompetent to try, unless where they are sworn as a jury pro hdc vice, or the issue is ordered to be taken at large; in. the absence.of which a-jury, properly so called, must be empanneled. They are not summoned fora single term, but attend the .cause from its inception to its termination; and this they must necessarily do, as they are to have the view before the return of the writ. They .are in. fact an inquest, the proceeding being festinum remedium, and their finding not a verdict, but an inquisition: so that-as well might the com-, purgators of a defendant who wages his law in debt on simple contract, (which has been done in Pennsylvania,) or a jury impannelled pursuant to a writ, to make partition, be selected according to the act, and sworn as it directs, to try the issue,-although there be no issue to try. To swear the recognitors who may find on their own view, to find according to the evidence, would, introduce a fundamental alteration in the nature of their duties, unless it were understood that they should swear to one thing .and do another; and can any one think the legislature had such an alteration in view. They were not legislating on the subject of the assize of nuisance; for, the truth is, no one ■ suspected that there was any such thing in existence; and to apply the provisions of the act to it, would, it seems to me, carry the construction beyond the spirit and the letter, and introduce confusion and substantial inconvenience into the proceedings. Beside, we have cotemporaneous exposition sanctioned by this court.in Livesayv. Gorgas; which, as it has produced no particular mischief, ought itself to be decisive.
In this action the proceedings are the same as in an assize of Novel Disseisin; and a variety of exceptions have been taken in the casé at bar, which doubtless would have prevailed in the time when Fleta was written. It. is urged, that the court should have quashed the writ for want of an answer to the first and second special pleas. As the pleadings were clearly defective in this respect, there certainly was a time when courts - would have done so. But so early as the reign of Edward the Third, it came to be the practice in cases like the present and some others, to put the whole case before the recognitors without regard to the pleadings. “ The taking of an assize at large” says Mr. Reeve in. his history of the English law [Vol. 3, p. 23,) “ was considered as the most liberal mode of .doing justice betwéen the parties; it was. breaking through the plea which was designed to stop the assize being taken, and it was throwing the merits of'the question, whether it depended on *213 a fact ora title, fairly before the recognitors.” And again; “ An assize would be taken at large on a defect in the pleadings; for as the direct point in the proceeding ought to go to the assize, if what was pleaded in order to .prevent the assize, by throwing the question upon another, fact, failed to do so, the result was that the assize should pass. Thus it was laid down as a rule,, that where abar was pleaded, and the plaintiff, in reply, made out his own title without traversing the bar, and the tenant omitted to rejoin to the title, the assize should, not be taken on .the title, but at large.” Thus wé have, as an instance, the very case under consideration; and, as such proceeding'was not irregular in the time of Edward the Third, it is in vaiu to look for more technical strictness now. Here the assise was substantially taken at large, by putting the whole, case before the recognitors; and the exception cannot prevail.
But it is urged that judgment quod capiatur assisa was not en- _ tered. It certainly was not entered in form, although the substance of it was preserved in having the assize actually taken. This judgment is proper after issue has been joined on the point of assize, and after special pleas in bar of taking the assize, (if there are any,) have been disposed.of; and' it is therefore in the nature of a rule'for trial after joinder of issue .in a modern action. Until of late, it was the practice to enter such a-rule in this state; as it was absolutely nécéssary at the common law. But would a court of error have reversed for want of it on the,ground of there having been a mistrial ? To have done so would'have brought a scandal on the law; and it would reflect as little credit on the administration of justice, to reverse for the same cause here.
These are the exceptions on which the plaintiff in error has mainly relied, and we think they ought not to prevail. There are others of less note, which we are of opinion are worthy of still less consideration; and on which, being purely technical, it is deemed unnecessary to bestow a particular consideration.
Huston, J.
This was an assize of nuisance brought by Peter Ihrie against William Barnet, in which the plaintiff recovered a verdict and judgment, and on which judgment an execution issued, under which a mill -dam, was prostrated, within the borough of Easton, in Northamptoncouniy.. , ’
The proceeding is novel, the effect striking; and, whatever may be said of summary justice and effectual redress, yet the one and the other may be attained in a manner w'Kicb will excite inquiry, and, perhaps, occasion some alarm. This country had been settled more than a century, and all the citizens, and all the lawyers, and all the'courts had progressed under certain notions of right, and certain remedies for wrongs, which, if not the very best, yet were so far good and effectual, as that the country prospered greatly, and there was, at least, no general complaint for want of redress of injuries, or of insecurity of rights. Our aficestprs had removed *214 from England-, -England had once been in a state of barbarism — ■ had, at one time, not much law except that of force, and not much right except that depending on power. . In progressing from this state to its present situation, the change was gradual. The first improvements gave place to further.improvement, until it has attained to such certainty and security in all the different departments of rights and remedies, as had not been exceeded in any other country. - . •
When our ancestors emigrated, it had, in this respect, attained nearly to .its present state; and much of the remedy, and many of the customs and forms of the thirteenth century, had become obsolete, and their place supplied by others better fitted to the present state, and more consonant to sound' principles and civilized manners. As colonists, the law of the mother country, to a certain extent, was brought here. But was it the law as then understood and practised, or what was. no longer law there, but what had been rejected, and hadbecorpe obsolete? Did we bring the existing forms of action, or those which on trial had been disapproved of and changed, those after the Norman conquest, or those of the present century.
The original settlers of this country, and their successors for more than a century, had no doubt on this subject. No one thought of going to the times of Edward and Richard for correct views of the rights or remedies necessary for more enlightened times. Trial by battel and attaints.and assize were equally unknown. We must .now decide whether they are to remain so, or are to be dug from the rubbish in which they had been forgotten, and introduced to our courts, and forced on our citizens, till again experience sends them back to obscuritj’’. The only difficulty, or, at least, the greatest which meets us is the fact, that in 1809, there was an assize of nuisance tried' in this county, and about the same time the judges, as is supposed, reported that several acts'of parliament prescribing the forms, &c,, of assize, were in force. As to the trial, let those who choose read it, and those who wish for .such another, say so. -,
As to .the report of the judges, it is not so explicit as could have been wished. Their notes to several statutes “ to be incorporated,” and “ this statute, or certain sections of it, are in force,” leaves an uncertainty as to what is x’eally meant in each case. I shall show that the words “ to be incorporated” did not mean as they do not purport to mean, that the statute has ever been - in use in this country, • '
I think no one will say, that an appeal of murder or felony was ever in Use .in Pennsylvania, or .that if can be, since the present constitution; yet four statutes, (the last in 1300,) are mentioned, and.have the note {Cto be incorporated” added to them; and if incorporated, we may see a trial by battel, for it is as much a part of the law as the'appeal.
*215 The punishment of a juror that is ambitexter and taketh money, and two other statutes, all in the reign of Edward 3d, empower the court, in which the cause is tried, (or the justices before whom he did swear) to put him to trial without delay; to put him to' plead to the country and take the inquest presently; and if he be attainted,to fine, imprison, &c. Now the trial may,be in the Court of Common Pleas, and the constitution requires an indictment, &c.
In Jourdan v. Jourdan, 9 Serg. & Rawle, Chief Justice Tilghman says, “ voucher is unknown, unless in a common recovery.” This is not now an action; .yet, half-a dozen statutes regulating voucher are put in the list, and marked “ to be incorporated” in one of which, trial by battel is expressly recognised. I stop here for the present, there is no end-to this inquiry, but the .end of the book.
“ To be incorporated” does not mean that the statute is in force. I have said thus much, not to censure the judges who made that report, for no man respects more than I do some of them, both as men and as judges; but to show that it is, and must be a mistake to say, or suppose they thought, or meant those statutes to be now in force. . In their report they say, “In perusing the statutes referred to in the report, the legislature will perceive, that in many of them, the language is upcouth, and unsuited to our present form of government;” and again; “ there is no other way of curing these defects than by re-enacting the substance of .these statutes in language suitable to our present condition,, &c.;” and I will add with great deference, that neither rights or remedies are treated in some of them, in a manner at all consistent with the general sentiment, or with the spirit of our own laws and constitution.
Several statutes relating to, and some of them minutely directing the proceedings in assize, are reported:.and the present case brings the subject before the court for its consideration. I admit, that of this action, I know little; of that little, I-dislike every part. The assize fell into disuse in England 'so long.ago, and the cases and the books would seem to show such variety in the courts, and in the proceedings, that I must conclude, that many things relating to it were in a state of change, and very few were settled and certain, when it was abandoned; I shall mention some matters of which there seems to be no doubt. '
And first, if the recognitors could not. agree, the assize was afforced or forced by adding others, until twelve were either for demandant or tenant. Whether these new jurors .heard the evidence I cannot learn. ■ -
Next, although the sheriff returned, that defendant was not found in his bailiwick, and had no goods by which he could be attached, yet shall the assize be taken, 3 Vin. 197, F. N. B. 410; and this is so well settled, that in a statute which I shall cite presently an enactment is made expressly on this ground, and prescribing a remedy. If defendant do appear, he cannot plead that the plaintiff *216 has enfeoffed .another, who is in full life, or that a feme plaintiff is a married woman. He may plead a release from the plaintiff of all actions personal, which is in bar of damages; but he cannot plead a release of the right, or any plea in extinguishment of the plaintiff ’s right,’ 3 Vin. 219, 220: it seems he is confined to the plea of nul disseisin. If the defendant appears by bailiff, he cannot plead any special plea, except what is nul tenant, nul disseisin, nor any plea on which a certificate of assize lies.
The assize might be brought before the Court of Common . Pleas or King’s Bench, if either was in the county where the lands lay. The judges .of these courts have authority without a patent, but generally, a, patent issued to certain persons named, either, to take all assizes in that county, or to take a particular case, and it would seem, these persons were named by the plaintiff. F. N, B. 409, et seq.; and in all cases, the certificate may be before other justices than those whoto.ok the assize, if the party’suing it wishes. F. N. B. 425.
But the statute 13 Ed. 1, c. 25, among other things enacts, that if exception be alleged by a bailiff, the taking the assize shall not be delayed therefor, nor the judgment upon the restitution of lands and damages: but, if the. master of such bailiff, that .was absent, come after, before .the same justices that took the assize, and offer to prove by record or rolls, that at another time an assize passed between the same parties of the same land,, or that the plaintiff at another time did withdraw his suit in a like writ,-or that a plea liangeth by a writ of more high nature; a writ of venire facias shall be granted unto him to cause the same record to be brought, and when he hath the same, and the justices do perceive that the said record shown by him would have been available before the judgment, that the plaintiff by force -of the same would have been barred of his action, the justices shall presently .cause the party to be warned, that, first recovered, that he appear at a certain day, at which the defendant shall have again his seisin and. damages, (if he before paid any .by the first judgment, given,) which shall be restored to him to the double, as is before said. And, also, he that first recovered shall be punished by imprisonment, according to the discretion of the justices. Now rpmember it is settled, that if the bailiff offered to show all or any of these things to the suit of assize, he will not be permitted; because his master may have this -remedy and recover again. The statute then adds, in the same manner, if the defendant, against whom the assize passed in his absence, show any deeds or releases, upon the making whereof the jury were not examined, nor could be examined, because there was no mention made of them in pleading, and 'by probability might be ignorant of the making of those writings, the justices upon the sight of those writings shall cause the party to be warned that recovered, that he appear at a certain day, and shall cause the jurors of the same assize to come; and if he shall verify those wri *217 tings to be true by the verdict of the jury or by enrolment, he that purchased the assize contrary to his own deed shall be punished by the pain aforesaid. Now, this re-examination was on what was called a certificate of assize, and was> before those who took the first assize, or before others — if the party su.ing it so willed. And a new patent of assize and a certificate issued to the sheriff, (see the forms of those writs, F. N. B. 421, et seq.) There was, also, another certificate, where the verdict was not well examined by the justices when'they took the verdict; or when they have not well examined or fully inquired of the issue joined, &c. Now, this re-examination ivas as well known, and in as constant use as the assize. It was prescribed by the statute; but it did not In practice depend on the will of those who took the assize. The party injured could obtain the writ and the hearing. " What mode shall we adopt to obtain it here, or are we to.have it here? Are we to have only half and the worst half of the proceeding, or the whole? And is that whole consistent with our system of government and judiciary?
If it shall be said, that'the absurdities and injustice of refusing a defence to-day and receiving it to-morrow; or of trying and deciding the cause of a man never summoned, and pulling down his house, &c., and then giving him a new trial, and fining and imprisoning the plaintiff, would not be adopted here, the answer is — then state what will be adopted and what rejected, and prescribe new forms and new rules.' But this will make it not the old assize, but a new kind of action, which I doubt our power to prescribe. As it is, it is, from all I can learn of it, unfit for use: it has not been used, and in my opinion cannot, until enacted by our own legislature. ■ ■
If it is said it has been decided in Livesay v. Gorgas that this remedy is in force; my reply is, it was not so decided. The whole opinion leans the other way; it only decides that if the action lay, it could be removed from the Court of Common Pleas to the Circuit'Court: and, to prevent mistakes and leave' the matter open, the Chief Justice expressly says that was the only point made, and the only one decided.
But so far as that case goes, it proves that if the remedy exist, it is an action, and not a mere inquest. An inquest never was removed or removable after it was begun, and before finding, from the Court of Common Pleas to the Circuit Court.
If it is an action, there was error in not quashing, because a capias and not a summons issued against the defendant; who was1 proved and admitted to be a freeholder. The act is peremptory; we have no power to dispense with or repeal it. If it is an action, the exception to the jury was fatal. ’ ,
By our acts of assembly jurors are .to try all actions in court, must be selected, put in the wheel, drawn and' Summoned in a particulár manner. These acts bind all our courts, and apply to all *218 cases. It will not do to say this is not an action, but an inquest: it is an action, or it is nothing. Who has heard or read of a writ, a narr., a plea in abatement, in bar, &c., in an inquest of,office, or of a plaintiff being nonsuited for not declaring? It is true the old books call these jurors recognitors; but the statute above cited, though not a modern one, calls them the jury. The law which says the assize may be brought and tried in the King’s Bench and the Court of Common Pleas, says so. It has all'the distinguishing characteristics of an action, and not one of an inquest. There was error in deciding that the plaintiff need not reply to the. release pleaded, by the defendant. It is true that it may happen that a plea is put in, requiring a replication, and this may be forgotten or overlooked, and the court may, after trial on the merits,).refuse to reverse on this ground. But it is not true that any court- can compel a. party who has pleaded to proceed to trial, and to try the cause until his plea is answered; unless, perhaps, in. the case where the plea is palpably fictitious and impertinent. This was not so. I do not say positively that it was a bar to the assize, though - I incline to think it was in reason and in law, but it was at least a bar to the recovery of damages. Where the defendant pleads in bar, and gives colour to the plaintiff, a replication is necessary; it is necessary in all cases where it doés not amount to the general issue: though it need not generally be set out at' large. 16 Vin. 230, title Assize, (y. a. and B.) Replication. That the plea was a good bar to the assize, see 16 Fin. Assize G. a. and Pleas in Bar, 12. Note per Littleton and Favasor, that it was held by all the judges in England, that a lease for years, the reversion in the plaintiff, was a good bar in assize,” and the-rest of that page. And I have not been able to find any decision to .the contrary.
There are other parts of this record to which.I cannot reconcile my ideas of law or of justice: but I pass, them over. I feel that in the opinion now delivered I ,shall be supposed to differ from men now gone; and for whom I felt more than ordinary respect; but I also suppose that the- general opinion, that the statutes included in their'report by the judges, • were believed by them to have been,'and to be now in force; is doing them great injustice. I know that some of them expected an act of assembly to follow that report; and that it was rather the principle of the statute than' the statute itself of which they approved and which they wished.to be incorporated. We have in point more than one expression of our late Chief Justice, that he did not know why particular statutes, not reported, were omitted: and have heard him state more than once his doubts of the propriety of others being included. And I feel confident, that where either the provisions of one of our acts of assembly, or the spirit and principle of our constitution is infringed by the words or the scope of - an old statute, or the forms of an antiquated action, it was not intended or expected they would or could be revived, except by the legislature. *219 I'also differ from the rest of the court; but.I cannot believe that our statutes of limitation, which were supposed to embrace every case, can be evaded by the introduction of antiquated and forgotten forms of action; or that our system of jury trial, so carefully and so repeatedly revised, shall be rendered useless; or that the privilege of freeholders, so long and so constantly protected; our acts of arbitration, and several parts of our constitution, are all to yield to a form of action, of the'good effects of -which we only know that on trial it was suffered to fall into disuse; of particular parts of which we know that they contradict our general notions of rights and remedies — and of the whole of which I confess myself to be so ignorant, that Í dread the labour it must cost me to form any correct opinion. '
Judgment affirmed.