[PHILADELPHIA, FEBRUARY 6th, 1837.]

DEWAR *against* SPENCE.

IN ERROR.

1. Where a writ has been in the hands of the sheriff, and is returned to the office from which it issued, with an endorsement of service having been made, though without the signature of the sheriff thereto, such return is amendable.

2. The 6th section of the act of 21st March, 1806, which declares that suits shall not be set aside for informality, &c., if the process has been duly served, &c.; extends to actions of partition.

3. A summons in partition was endorsed "*nihil habet,* and published as the law directs;" but there was no signature to the return. The record contained the following entry: " and now the sheriff of Philadelphia County makes return of the said writ," &c.; and the sheriff duly returned the writ of partition, that the parties had been duly warned, &c.: *Held,* that it sufficiently appeared, that a return was made by the sheriff to the summons; and that the return was amendable.

4. The Court in which an action of partition is instituted, may, if the jury return that the land cannot be divided, decree the same to the demandant at the valuation; although the defendants reside out of the commonwealth, and judgment has been obtained against them by default.

ON a writ of error to the District Court for the City and County of Philadelphia, the case was thus:—

To the June term, 1828, of that Court, Andrew B. Spence issued

a summons in partition to Helen Margaret Dewar, and James Spence, to show wherefore partition should not be made between them, of " a certain three story brick messuage or tenement, and lot or piece of ground situate on the south side of Francis street, in the county of Philadelphia, containing in breadth on the west side thereof, two hundred and twenty-five feet; and on the east side thereof, two hundred and ninety-one feet; and on St. Andrew's street, four hundred and ninety-five feet, bounded westward by Schuylkill Second street, northward by Francis street, eastward by Schuylkill Third street, and southward by St. Andrew's street, together with the common use and privilege of the said streets, adjoining said lot and the appurtenances; and also all that certain lot or piece of ground situate on the east side of Schuylkill, Third street, in the same county, containing in breadth twenty feet, and in length or depth one hundred and eighty feet, bounded westward by the said Schuylkill Third street, northward by grounds now or late of George B. Dawson, eastward by a court called Middle Court, and southward by ground now or late of the Reverend William M'Cra, together with the common use and privilege of the said streets and court, and the appurtenances; and the said lots of ground being the same which Seth Johnson, and Mary his wife, conveyed *inter alia,* to Andrew Spence, by two deeds, each dated the sixth day of August, one thousand seven hundred and ninety-seven, recorded in the office for recording deeds, for the city and county of Philadelphia, in deed book No. 72, and page 529 and 533."

This writ was returned into the prothonotary's office, with the the following endorsement thereon: " *Nihil habet, and published as the law directs.*" There was no signature to this endorsement.

On the 14th June, 1828, the plaintiff's attorney filed his declaration. On the 11th of December following, the Court ordered judgment by default, and awarded a writ of partition; and on the 19th of December, the writ of partition issued.

To this writ, the sheriff returned that " by virtue of the said writ to me directed, on Saturday,. the fourteenth day of February, in the year of our Lord, one thousand eight hundred and twenty-nine, taking with me the jurors whose names and seals are hereunto annexed, good and lawful men of my bailiwick, I went in my proper person, to the premises mentioned in the said writ, and the parties in the same being severally warned, and as many as chose being present, and the good and lawful men aforesaid, upon their oaths and affirmations respectively, did say that the property as mentioned in the said writ, cannot be parted and divided without prejudice to or spoiling the whole; therefore I have valued and appraised the same at the sum of two thousand six hundred dollars. In witness whereof, &c."

(Dewar v. Spence.)

On the 19th of March, 1829, on motion of *S. Meredith*, Esq., the Court granted a rule to show cause why the valuation of the Jury of partition in this case, should not be confirmed by the Court, and the plaintiff be permitted to take the property at such valuation.

On the 21st March, 1829, this rule was made absolute; and on the same day, the following affidavit was filed, to wit:

" City and County of Philadelphia, ss.

Robert A. Philson, being duly sworn according to law, deposes and says, that he is well acquainted with Helen Margaret Dewar, and James Spence, the defendants above named, and that to the best of this deponent's knowledge and belief, they are both at this time absent from this country, beyond seas, to wit, that the said Helen Margaret Dewar is in Scotland, in the kingdom of Great Britain, and the said James Spence, in New South Wales, in the Island of New Holland; and this deponent further says, that his belief as above stated, is founded upon knowledge derived from the representations of their family and friends, with whom this deponent is intimately acquainted, and has constant intercourse; and further the deponent saith not. Sworn and subscribed, &c."

On the 22d of June, 1835, a motion was made for a rule to show cause why the judgment and proceeding in the partition, should not be set aside; and the following reasons were filed:

" 1. The said Mrs. H. M. Dewar, one the defendants, was absent from the United States, and the summons in partition was neither served on her, nor was the notice given according to law.

2. Because there was no return to such summons in partition.

3. Because the judgment by default was irregularly entered against the said Mrs. Dewar.

4. Because no notice was given to the said Mrs. Dewar of the writ *de partitione facienda*, or of its execution.

5. Because the said property was perfectly susceptible of division between the parties, without prejudice to or spoiling the whole.

6. Because the valuation was far below the real value of the said real estate.

7. Because no return was given of the rule to show cause why the said return of the jury should be confirmed, to the said defendant, Mrs. Dewar.

8. Because the plaintiff was allowed to take the property at a valuation entirely inadequate, without notice to the other parties in interest.

9. Because the said plaintiff knowing the residence of the said Mrs. Dewar, and corresponding with her, concealed all his proceedings in this matter, and gave her no notice of his wish or intention to have a partition effected, or that any proceedings for that purpose had been commenced, prosecuted or completed."

On the same day, the affidavit of Mrs. H. M. Dewar, was filed as follows:

" City of Philadelphia, ss.

Helen M. Dewar, widow of Dr. Henry Dewar, late of Lassodie Fifeshire, in Scotland, being duly sworn, deposes that she is the daughter of the late Dr. Andrew Spence, formerly of this city, who died in the year 1805. The said Dr. Andrew Spence left by his will, his real estate, and particularly a large lot of ground on the south side of Coates street, between Schuylkill Second and Third streets, and a lot containing 20 feet in front, on said Third street, to be divided among his four children; as by the said will duly proved and of record in the said city, will appear. Immediately upon the death of the said Dr. A. Spence, the whole of his remaining family removed to Scotland, where this deponent married, and where, with the exception of temporary absences, she has constantly resided until her return to the United States, in the autumn of the year 1833.

The brother of this deponent, Andrew B. Spence, had previously left Scotland, and fixed himself permanently in Philadelphia, where he carried on business as a merchant, and took charge of the property of the family, as the administrator of his mother, Mary Spence, but without any power of attorney or authority, either from this deponent or from her late husband. This deponent was in the habit of regular correspondence with her said brother while he resided in this city, and his letters reached her without difficulty or delay. During the whole of their correspondence, the said Andrew B. Spence never once intimated to her directly or indirectly, any wish or intention to have a division of the real estate of their father effected by course of law; nor did he ever give her any information whatever, in relation to the proceedings instituted and carried on by him against her; although he wrote to her on family matters just before and during, or soon after the commencement and prosecution of the above-mentioned suit in partition. This deponent never heard, knew, or suspected that any such suit had been instituted, carried on, or determined, or that the property of her said father had been taken at a valuation by the said Andrew B. Spence, until her arrival in this country, when she made inquiries in relation to her affairs. The only information she received on the subject, was in a letter dated in March, 1833, and received a short time before her leaving Scotland, in which the said A. B. Spence stated that her share of St. Andrew's square had been paid into Court, but without any statement of the means or course by which this had been effected.

The said A. B. Spence has always been indebted to said deponent, both on account of her mother's estate, and on account of the rents of the real estate of her father; and by his own accounts furnished

(Dewar v. Spence.)

to her, admits himself to be so still, This deponent has been informed and believes that the proceedings in the said partition are irregular, in not having been regularly and fully published according to law; and she verily believes the valuation at which the property in the said writ and proceedings mentioned, was inadequate, and far below the real value thereof, whereby she has suffered considerable injury.

She is further informed and believes that the lots of grounds were perfectly susceptible of division into equal and fair purparts and shares, without any prejudice to or spoiling of the whole. She is also informed, that there are other matters in which the said proceedings are irregular, and ought to be set aside.

Since her arrival in this country, this deponent has been induced to delay proceedings to recover what she conceives her just claims on the above-mentioned property, by the repeated assurances of her brother, that they should all be adjusted in a satisfactory manner. Sworn and subscribed," &c.

The following entry appears among the records, under date of June 15th, 1836. "The signature of Jacob Strembeck, endorsed on the original writ of summons in partition in this case, having been so endorsed on said writ in the year 1836, (under the impression that it was done according to the course of the court,) after the writ had been returned into the office of this court, and after the motion to set aside the proceedings had been made, and the reasons filed; by writing filed, it is agreed that the said signature of Jacob Strembeck, Sheriff, be considered as if the same had never been endorsed on the said writ; and the court order that said agreement stand as part of the record."

On the 25th of June, 1836, the District Court discharged the rule to show cause why the proceedings should not be set aside; and the defendant, Mrs. Dewar, sued out a writ of error from this Court.

The following was the assignment of errors.

" 1. The summons in partition was not served or published according to law.

2. No return was made by the sheriff to the summons in partition.

3. The judgment by default was erroneous; the defendant not having been summoned, and having had no notice of any proceedings in the cause.

4. The *Breve de Partitione facienda* was not served according to law.

5. The confirmation of the valuation of the jury of partition,

(Dewar *v.* Spence.)

and the permission to the plaintiff to take the property at that valuation, were both erroneous : no notice whatever having been given to the defendants, of the application to the court for that purpose ; and H. M. Dewar being then, and having been from long time previous to any proceedings in the cause, domiciled in Scotland.

6. The property was susceptible of division without prejudice to or spoiling the whole."

Mr. *Williams,* for the plaintiff in error.

We contend that there was no return to the writ of summons. It does not appear in whose handwriting the endorsement is, but it is agreed that it is not the handwriting of the then sheriff. The statute of York, (12 Edw. II. st. 1, c. 5,) provides that the sheriff shall put his name to the King's writs. It was necessary at common law that the sheriff should sign all returns. *Rowland's Case,* (5 *Rep.* 41.) In *Strainer* v. *James,* (*Cro. Eliz.* 311,) it was said to be no return where the sheriff's name is not subscribed. *Young* v. *Watson,* (*Id.* 308-9.) *Blodwell* v. *Edwards,* (*Id.* 509.) *Bonner* v. *Rye,* (*Id.* 587.) *Dawson* v. *Thorpe,* (*Id.* 767.) *Scroggs* v. *Spencer,* (*Id.* 703.) *Holworth* v. *Proctor,* (*Cro. Jac.* 188.) *Lamb* v. *Wiseman,* (*Hob.* 70.) *Ackridge* v. *Corham,* (3 *Bulstr.* 220.) *Brook* v. *Ellis,* (1 *Salk.* 363.) *Rogers* v. *Smith,* (1 *Adolph. & Ellis,* 772. S. C. 28 *Eng. Com. Law Rep.* 228.) It is the signature that gives validity to the return. What remedy could we have against the sheriff for a false return, if he have not signed it ? Has the defect in this case been cured by statute ? The statute 18 Eliz. c. 14, provides that *after verdict,* judgment shall not be stayed or reversed by reason of any imperfect or insufficient return. In some of the cases which I have cited, it is decided that where there is *no* return, the statute of Elizabeth does not apply. At all events, it is confined to the case of judgment upon verdict, not judgment by default. The statutes of 21 Jac. I. c. 13 ; 16 and 17 Car. II. c. 8, and 4 Anne, c. 16, do not aid this case ; *Tidd's Practice,* 213. In *Allnat on Partition,* p. 66, 70, the practice in England on proceedings in partition is laid down. There can be no judgment by *nil dicit ;* and therefore the statute 4 Anne, does not apply. It is a general rule, that no amendment will be allowed in real actions ; and although it has been admitted in partition, yet it was with reluctance. *Baker* v. *Daniel,* (6 *Taunt.* 193 ; S. C. 1 *Eng. Com. Law Rep.* 353.) The act of 21st March, 1806, applies only to actions for damages ; besides, it was passed previously to the act which authorised publication of the summons in partition, and cannot be extended so as to embrace a judgment given under the latter act. The only case in which the writ is not *album breve,* is where the sheriff writes his name either in the body of the return, or at the foot. Even if under the statute of *jeofails,* the court think that this return may be amended, they will, never-

(Dewar *v.* Spence.)

theless, look into the service of the writ, and they will find that publication was made in one newspaper only, although the act of 1807 directs that it shall be in two. *Fitz-simmons* v. *Solomon*, (2 *Binn.* 436.)

The District Court had no power to award the land to A. B. Spence at the valuation. The act of 1799, which authorises the court to adjudge between the parties in this respect, supposes them all to be in court. The act of 1807, which authorises publication in the case of absent defendants, seems to apply only to cases where the property is actually *divided;* not to cases of *valuation.* If the parties are absent from the country, the court ought to order a sale.

Mr. *Meredith* and Mr. *James S. Smith, contra.*

We represent a *bona fide* purchaser, who knew nothing of the situation of the parties; and relied upon the judgment of the District Court in the action of partition. The objection on the other side is made by Mrs. Dewar alone. The other party in interest (James Spence) is content with the proceedings. As to Mrs. Dewar, it was in evidence that she knew of the proceedings in the spring of 1833, and that she arrived here in the autumn of 1833; and her first application to the court below was on the 22d of June, 1835, after a sale had been made by Andrew B. Spence to a third person.

[THE COURT here requested the counsel to confine himself to the question of the validity of the return to the summons in partition.]

In point of fact, the return was in the handwriting of the sheriff's clerk, who usually made the returns, and the omission of the sheriff's name was accidental. We have evidence here to prove the handwriting to the return.

This is a return by the sheriff, though not subscribed by him. It has been recognized by him in the recitals to other writs, and in the deed executed by him to A. B. Spence. The advertisement also, which is annexed to the return, has his signature. In *Dyer,* 182, pl. 56, it appears that the sheriff might have come in and disavowed it; and there are many other authorities to the same effect. In *Scroggs* v. *Spencer,* (*Cro. Eliz.* 704,) cited on the other side, it was held that coroners were not within the statute of York, and the reason is because coroners have always been elected in England by the people, not appointed by the king, as in the case of sheriffs. In the former case no uncertainty can exist in respect to the officer. Here sheriffs are elected as coroners in England. It never was necessary that the high sheriff should sign the return. It was sufficient if signed by the under sheriff. 14 *Petersdorff's Abr.* 600. 1 *Rolle Abr.* 204. *Comyn's Dig.* tit. *Amendment. French* v. *Wiltshir.* (*Andrews,* 67.) The statute does not invalidate the proceedings if the return is not signed, but requires the sheriff to be amerced. *Watson on Sheriff,* 68. *Dawson* v. *Thorp,* (*Cro. Eliz.* 767.) 1 *Lean.*

(Dewar *v.* Spence.)

139. *Plowden*, 63, 65. Most of the cases cited on the other side were cases of an *album breve*. *Stainer* v. *James*, (*Cro. Eliz.* 310,) appears to be overruled by *Wear* v. *Woodliff*, (*Id.* 466.) And all those cases were prior in time to the statutes of *Jeofails*, except *Rogers* v. *Smith*, (1 *Adolphus & Ellis*, 772,) which is the case of an *album breve*. If the return is defective it is cured by the statute of amendments. The statute 8 Hen. 6, 18, expressly extends to this. *Bro. Abr.* tit. *Amendment*, pl. 9. *Barnes's Notes*, 11, 23. The act of assembly of 1807, was intended to supply a defect in the common law, where a tenant in common resides out of the commonwealth. In such case the proceedings are similar to those in chancery. It is admitted that the statutes of 18 Elizabeth and 16 and 17 Charles 2d, would have cured this defect if there had been a verdict, but the statute of 4 Anne extends to cases of confession, *non sum informatus*, and *nihil dicit*. The act of assembly speaks of a "judgment by default." Now a judgment by default is for want of an appearance, and is equivalent to a *nihil dicit*; or it is an implied confession. *Co. Litt.* 259 (*a*); 2 *Chitty's Archbold's Prac.* 503, 549. The act of the 21st of March, 1806, however is believed to be conclusive of this question. The words of that act are broad enough to include real actions; and in *Benjamin* v. *Armstrong*, (2 *Serg. & Rawle*, 392,) they were held to extend to ejectments. The act it is true applies only where the process has been *served* on the defendants; but the act of 1807 declares that publication shall be equivalent to service in the case of a defendant residing out of the commonwealth. The mischiefs which would ensue if the doctrine on the other side were sustained, would be very great. No one would purchase property which had at one time been the subject of proceedings in partition, if it were necessary to examine all the writs critically, to ascertain if the sheriff had signed the returns and made publication according to law.

Mr. *Williams* in reply.

The act of 1807, says that the writ shall be *executed* by the sheriff, and that the service shall be by publication. This is the act of the sheriff, not of the court. Here there is no evidence of publication. It is said that the record shows that the sheriff recognized the return. The only evidence of this is a printed advertisement cut from a newspaper, and stuck on the back of the writ; which if it proves any thing, proves that the publication was in only one newspaper. The case in *Hobart*, was not one of an *album breve*; as there was the signature of one sheriff. The statute 16 and 17 Charles 2d, is the only one that applies to original process; and that is confined to judgments after verdict. A judgment by *nil dicit* cannot take place, unless there has been an appearance. 1 *Tidd*, 313, shows that before the stat. 12 Geo. 1, there could be no appearance entered by the plaintiff for the defendant. The act of the 21st of March,

1806, cannot be applied to *real* actions without straining its language, beyond reason.  It is true that it has been applied to *ejectment;* but that is an action for *damages,* which is expressly mentioned in the act.  [Rogers, J.—It has been held to extend also to the assize of nuisance, in *Barnet* v. *Ihrie;* and may now, by a liberal construction, be taken to include all civil actions.]   At all events it must *appear* that the process was duly served, which is not the case here.

The opinion of the court was delivered by

Rogers, J.—At the common law, it was not usual to put the sheriff's name to returns; for when a writ was returned, it was intended to be by the officer of the court, whose duty it was to make it; and for this reason it was held that such omission was not erroneous.  *Egerton* v. *Morgan,* (1 *Bul.* 73;)  *Scroggs* v. *Spencer,* (*Cro. Eliz.* 704.)   But by the statute of 12 Edw. 2, c. 5, it was provided, that from thenceforth "sheriffs and other bailiffs that receive the king's writs, returnable in his court, shall put their names with the returns, so that the court may know of whom they took such returns, if need be: and if any sheriff or other bailiff leave out his name in his return, he shall be grievously amerced to the king's use."   It is not very clear what was the specific evil of which complaint was made in parliament, which produced the stat. of Edward, but the probability is, that it arose from the fact that in some counties there were two or more sheriffs, appointed in different modes, and of whose appointments no certain record was made; for it must be remarked that the statute does not extend to coroners, who are elected, and about whose appointment no uncertainty exists. It appears by the report of the judges, that that part of the statute of Edward, is in force in this state, which obliges the sheriff and other officers to sign their names to the return of writs.  The first question raised by the plaintiff in error, depends upon the construction of this statute, and mainly rests on its authority.  It is contended that the omission of the sheriff to sign his name to his return, renders the proceedings void; whilst on the other hand, it is insisted that it is erroneous merely, and amendable, and that the sheriff, in the language of the statute, shall be grievously amerced.  And on this point, it is very clear that the distinction is taken in all the authorities which have been cited, between the return of the writ *album breve,* which is no return at all, and an insufficient or mis-return.  In the former it is void; but in the latter it is erroneous, and as such is amendable, either at the common law or by the statutes of amendments.  *Stainer* v. *James,* (*Cro. Eliz.* 311.)   *Young* v. *Wilson,* (*Cro. Eliz.* 309.)   The point therefore is, whether this falls within the former, or latter class of cases.

In *Dalton,* it is said, that where the sheriff or other officer returns a writ, he ought always to endorse his name on the writ, otherwise it is an incurable error, and it has been so adjudged;

(although it has been objected, that in case of a *distringas* or *venire* which are judicial processes, it may be amended,); for as the court there observed, the sheriff's name not being to it, it is no return. But in *The Queen* v. *The Archbishop of Canterbury*, (1 *Leonard*, 139,) the law is ruled otherwise. The case was this: The queen brought a *quare impedit* against the archbishop of Canterbury, the bishop of Chichester, and the incumbent, and counted that Ashburton was seised of the advowson; and that he was outlawed in an action personal, at the suit of such a one, and showed the whole outlawry certain. And exception was taken to the count, because in setting down the outlawry, the process is alleged to be returned by the sheriff, but the name of the sheriff is not there expressed. And as to that, it was agreed by the court, that the truth is, that it is provided by the statute 12 Edw. 2, c. 5, that the sheriffs in their returns, put the names to their returns; but it is not required so to plead it, for the omitting thereof doth not make the record void, but the sheriff shall be amerced. And in *Dalston* v. *Thorp*, (*Cro. Eliz.* 767,) which was error of a judgment in the court of Common Pleas, in debt, upon an escape, the error assigned was, for that the original writ had not the sheriff's name to the return thereof, according to the statute of York, 12 Edw. 2; and for this cause it was moved that it was error, and the judgment reversable. But in regard the defendant had appeared, and the plaintiff had counted against him upon the record of the recovery, and the defendant had pleaded *nul tiel* record, it was holden not to be material, although the writ had not been returned; for he shall never take advantage (after appearance and pleading,) of such misprision, nor of the mis-awarding of mesne process; wherefore judgment was affirmed. In the latter case, unlike the case in *Leonard*, the point is not directly decided, but the court put the omission on the ground of a misprision which is always amendable. These decisions we consider to be the better authority, because they are more in accordance with the spirit and intention of the act, than the opinion intimated in *Dalton*. The statute was intended, as is stated in the act itself, to remedy an inconvenience which had arisen from the omission on the part of the sheriffs, to put their names with their returns, so that, if need be, the court did not know by whom the returns were made; for remedy whereof the statute provides, that the sheriff who is in default shall be grievously amerced; but it is no where intimated, nor did the mischief which the statute designed to remedy require it, that the return on account of such omission, should be void. Such a construction would sometimes operate with great severity on parties and innocent purchasers, who are in no default, who would be bound to a critical examination of sheriffs' returns; a practice which has never been thought necessary in this state, and on which many titles may depend. It was required at common law, and is equally necessary since the statute, that a return should be made by the sheriff, or by some person in his name; and

(Dewar v. Spence.)

for this reason it has been held, that returns *album breve*, that is to say, where the writ has never been in the hands of the sheriff, or where he has refused or neglected to return it, are void; but this is not so, where a return has been actually made, either before or since the statute. The plaintiff in error has cited *Rowland's case*, (5 Co. 41.) *Stainer* v. *James*, (*Cro. Eliz.* 311.) *Young* v. *Wilson*, (*Cro. Eliz.* 309.) *Wears* v. *Woodliff*, (*Cro. Eliz.* 466,) and *Rogers* v. *Smith*, (28 *Eng. Com. Law Rep.* 204;) and in all of them, as well as in the cases cited by the defendant in error, a distinction is taken between a return of a writ *album breve*, and an insufficient or mis-return. The court put them on the ground, that they are returns *album breve*, and it is conceded that if they were insufficient returns, they would be erroneous and amendable.

This was a judgment by default, and if there was no return made by the sheriff of the writ, it would be the duty of this court to reverse the proceedings; but if a return was made, although deficient in this requisition of the statute, no such necessity is imposed upon us. Without insisting on the statutes of *Jeofails*, we are of the opinion that the act of 1806, is sufficiently comprehensive to embrace this case. That act is highly remedial, and has been applied to cases, which although not within its letter, are within its spirit, and has been ruled to cure all matters of form, in actions real, personal, or mixed. Thus amendments have been made in ejectment, and what perhaps is still more pertinent, in an assize of nuisance, which is a real action. *Barnet* v. *Ihrie*, (17 *Serg. & Rawle*, 174.) But did the sheriff make a return of his writ? Of this we have no doubt. The return is usually made on the back of the writ, but this is not absolutely necessary. The statute requires that the name of the sheriff shall be put with the return. On the back of the writ, which is regularly filed in the proper office, we have this endorsement made, by legal intendment, by the sheriff himself, or by his authority, " *nihil habet*, and published as the law directs;" and in another part of the record, which we are not at liberty to disregard, because it is returned with the record and forms part of it, we find this entry: " And now the Sheriff of Philadelphia county makes return to said writ, *nihil habet*, and published as the law directs." Now although the return is not according to the form prescribed, yet sufficient appears to show, that, in truth, a return was made to the court of the service of the writ by an officer, having authority to make the return. In addition to this, this return is recognised by the sheriff himself; for to the writ *de partitione facienda*, he returns that he went, in his proper person, to the premises, and that the parties to the same were severally warned. We cannot, therefore, avoid the conclusion, that a return was made of the service of the writ; and from this it results that this was an insufficient or misreturn, which is amendable.

It is further contended, that the court erred in permitting Andrew

(Dewar *v.* Spence.)

B. Spence, the plaintiff in partition, to take the property at the valuation. It is said that the court should have ordered a sale. But I cannot perceive what power the court would have, under the circumstances of this case, to decree a sale; for this can be done only where *none* of the parties agree to take the land at the valuation; and the order, by the express directions of the act, must be at the instance of the demandant himself. But here one of the parties, the demandant himself, so far from applying for an order of sale, prays the court that he may be permitted to take the property at its appraised value. If, then, the court were in error in adjudging the property to him, it follows that the proceedings in partition must end, when one or more of the parties reside out of the commonwealth, upon the confirmation of the return of the inquest ; which would be in opposition to the intention of the acts, which were designed to afford a speedy remedy to the demandant, in causing partition to be made among the owners, whether they resided within the state, or in a foreign country. Nor is it perceived that any injustice will flow from this construction, as the presumption is, that the property has been appraised at its full value ; and the rights of owners can be as well, if not better secured, than they would be when the property was sold in the absence of the parties in interest, at public auction. The publication which is directed in the supplements to the act concerning writs of partition, is the only notice which the legislature deemed necessary, where one or more of the owners resided out of the commonwealth, and is made as good and effectual, as a personal service ; on such service the parties are in court, and are deemed to have notice, not only of the writ of partition, but of all ulterior proceedings which may be necessary, until the final consummation of the cause. Whether the other parties are willing to take the property at the valuation, or not, is immaterial ; as the courts are expressly empowered, in all events, to determine to whom the lands and tenements shall be conveyed.

The other errors depend on questions of fact, properly determinable by the court below, and are not the subjects of error in this court.

Judgment affirmed.