## STEPHEN F. PAULIN *vs.* CHARLES KAIGHN.

1. In an action brought by one obligor on a bond, against his co-obligor for contribution, the real amount for which each obligor is bound may be shown by parol evidence.

2. Where, by a valid contract upon a sufficient consideration, the creditor gives time to the principal debtor without the consent of the surety, the surety is discharged.

3. A surety may take collaterals from his principal to indemnify himself against his liability; and if he bring an action against his co-surety for contribution, his holding such collaterals will not bar a recovery.

Paulin v. Kaighn.

4. Where several persons give a joint bond for the purpose of securing to the obligee the debt of a third party, and one of the obligors afterwards receives from such third party securities to secure the obligors on the bond, and subsequently relinquishes those securities without the consent of his co-obligors and without fraud, such relinquishment is no bar to his recovering of his co-obligors their contributive share, for which they were liable on the bond.

5. But if anything is paid to one of the obligors, it enures to the benefit of all.

6. If certain creditors sign an agreement to arrange their claims against a debtor, in a manner therein specified, upon condition that all the creditors accept of the same terms, the agreement will not be binding upon any of the creditors, unless all accept it.

In error to the Camden Circuit.

This was an action of *assumpsit*, brought in the court below by Kaighn against Paulin, to recover of the defendant his contributive share on a bond given by Kaighn and Paulin and Joseph M. Cooper to William Champion, to secure a debt of the South Camden Ferry Company.

On the trial, it was proved that judgment had been obtained on the bond, and that it had been paid by Kaighn and Cooper.

After the plaintiff had rested his case, the defendant's counsel opened the defence as follows:

I. It appears by the evidence of the plaintiff, and we further offer to prove the same, that this is an action for contribution by one of the three co-sureties; that the debt alleged to have been paid was a debt of the South Camden Ferry Company, for which these sureties were jointly bound to William Champion.

II. We shall show, in defence, that Charles Kaighn, the plaintiff, was president and a director of the company, from its organization until a late election in April of this present year, and also during a considerable part of that time one of the executive committee of the board of directors, taking an active part in its business, and particularly of its financial affairs, and therefore well informed of its affairs.

That Joseph M. Cooper, the other co-surety referred to

in the evidence of the plaintiff, was during the same period a director, and during a considerable part of the time treasurer of the company.

III. That the ferry company being the principal debtor, from time to time placed in the hands of these two co-sureties, Charles Kaighn and Joseph M. Cooper, securities to indemnify them against this liability, as well as other liabilities incurred and to be incurred by them in behalf of the company, and for these advances, as also for other advances made to, for, and on behalf of the said ferry company, and that those securities were surrendered and given up by the said Charles Kaighn and Joseph M. Cooper without the consent of this defendant.

1. The South Camden Ferry Company, on or about the 15th December, 1854, in pursuance of a resolution of the company, previously made, duly executed a mortgage to Charles Kaighn, Joseph M. Cooper, Stephen F. Paulin, and others, on all or most of the property of the company, in the sum of $30,000, to secure the persons named as mortgagees therein for all sums of money advanced, or to be advanced, to or for the company, and from all loss from responsibilities by them, or any of them, incurred for or in behalf of the company, *pro ratâ*, to the extent of the said $30,000; that the said mortgage, though in part made for the benefit of the defendant, was never in his possession or control, but was held by the said Charles Kaighn and Joseph M. Cooper, or one of them, and was by them canceled and discharged without the consent of the said defendant, after the alleged payment of William Champion.

2. That the said company, on or about the 31st day of March, 1855, pursuant to a previous resolution of the company, duly executed a mortgage on all or most of the property of the said company to Stephen Coulter, to secure coupon bonds of the company to the amount of $55,000, and which bonds the said president was authorized to negotiate and to deliver in payment of any debts

of the company; and further, in substance and effect, with the said bonds to secure the officers and members of the company who had or might afterwards pay off and discharge any debts of the said company, or advance any moneys for its benefit; that under the said resolution of the said company, and the terms of the said mortgage, and in pursuance thereof, the said Charles Kaighn received and appropriated twenty bonds, duly issued under said mortgage, of $500 each, in all to the amount of $10,000, as security for his advances made and to be made for the company, and which bonds were in the hands of the said Charles Kaighn at the time of the alleged payment to William Champion, and which he then held as security for said alleged advance and payment by him made for the benefit of said company; that the said bonds were surrendered up, and the said last-mentioned mortgage canceled, by the said Charles Kaighn and Joseph M. Cooper, without the consent of this defendant.

3. That about December, 1855, or early in 1856, the said Charles Kaighn and Joseph M. Cooper, the said company being then indebted to them, as alleged, for the payment of the said moneys to the said William Champion, with other creditors, signed a written agreement, intended for the benefit of the said company and its creditors, by which they respectively agreed to accept from said company, in lieu of and in payment of the indebtedness of the company to them, respectively, bonds of the company payable in five years, to be secured by a mortgage of the said company, specified in said agreement for $75,000, as by the said written agreement will more fully appear; that in pursuance of said agreement, the said company did make such mortgage and issue said bonds; that other creditors received said bonds in discharge of the said company, in pursuance of said agreement; that it was part of the said agreement that all the indebtedness of the said company to the said Charles Kaighn and Joseph M. Cooper, and other creditors who signed said agree-

ment, that time should be given upon such indebtedness funded as aforesaid ; that the said Charles Kaighn and Joseph M. Cooper were bound by their said agreement to fund the indebtedness of the said company for the said payment to the said William Champion, as well as other indebtedness of the said company to them, and that to neglect or refuse so to do would be in fraud of said agreement: that this defendant was no party to said agreement, and that it was made and executed, and all prior securities relinquished, without his consent.

On motion of plaintiff's counsel, this defence was overruled. The defendant's counsel excepted to the decision of the court, and a bill of exceptions was allowed and sealed.

Argued at February Term, 1859, before the CHIEF JUSTICE, and Justices OGDEN, VREDENBURGH and WHELPLEY.

*Dudley* and *Carpenter*, for plaintiff in error.

*Voorhees* and *Browning*, for defendant.

The opinion of the court was delivered by

WHELPLEY, J. This was an action for contribution, brought by Kaighn against Paulin. Kaighn, Paulin, and one Cooper executed a joint bond, on the 9th September, 1852, to one Champion. Judgment was obtained upon it, and Kaighn and Cooper paid it off, each paying one-half. Kaighn brings this action to recover of Paulin the one-third of the one-half paid by him. The case, on the part of the plaintiff, was made out on the trial. But the defence offered by the defendants was overruled, and error is brought on bills of exception for this overruling.

The defendants offered to show, by parol evidence, that the bond was executed by the three obligors, as sureties for the South Camden Ferry Company. This was proved

by the plaintiff himself, and was clearly admissible evidence. The rule seems well settled, that in an action brought by the surety against the principal for indemnity, or by one surety against another for contribution, the real situation and responsibility of the parties may be shown by parol evidence in an action at law. There is an obvious propriety in excluding the evidence at law in an action upon the contract brought by the creditor. By the form of the instrument, they agree to be bound to him as principals; the action is to enforce the instrument in the shape the parties put it. But when the action is brought for indemnity or contribution, by one of the parties signing it, no such reason exists; the creditors not interested in that question, it comes up collaterally. The instrument is not the foundation of the recovery—that depends upon whether the relation of principal and surety existed; the fact that they agreed to, and did become jointly bound with another to a creditor, is not inconsistent with the fact that they were jointly bound as sureties. *Craythorne* v. *Swinburne*, 14 *Vesey* 160; *Taylor* v. *Savage*, 13 *Mass. R.* 102; *Harris* v. *Warner*, 13 *Wend.* 400; *Sisson* v. *Barrett*, 6 *Barb.* 199; *S. C.*, 2 *Comst.* 406; *Pintard* v. *Davis*, 1 *Zab.* 634.

The defendants offered to show that the Camden Ferry Company put into the hands of Kaighn and Cooper securities to indemnify them against their liability, which they surrendered without the consent of Paulin. They also offered to prove that the ferry company executed a mortgage to Kaighn, Cooper, Paulin, and others, for the sum of $30,000, to secure the persons named as mortgagees therein for all sums of money advanced, or to be advanced, and for all responsibility by them incurred for the company, *pro ratâ*, to the extent of the thirty thousand dollars; that said mortgage was held by said Kaighn and Cooper, and was by them canceled and discharged, without the consent of Paulin, after the payment to Champion.

Were these offers relevant evidence? did they disclose any legal defence to the action?

It is said that the offer made did not amount to an offer to prove that Kaighn, Cooper and Paulin were sureties for the ferry company; that it did not appear that the company was liable to Champion at all; that the plaintiff, defendant, and Cooper absolutely assumed to pay the debt, not as sureties for the company, but as principal debtors.

I understand the offer to have been to prove that these persons were sureties to Champion for the debt of the ferry company—at all events it was a liability contracted for the company at its request; the company, as to them, was bound to pay the debt in their exoneration; that constituted the relation of sureties *inter sese;* each had his remedy against the company for what he might be compelled to pay on the contract; each had his remedy against the other for contribution.

It seems well settled that sureties are not only entitled to contribution from each other for moneys paid in discharge of their joint liabilities for the principal, but they are also entitled to the benefit of all the securities which have been taken by any one of them to indemnify himself against such liabilities. The action for contribution rests not upon contract, but upon the broad principle of equity, that in cases where there is an equality in the obligation there shall be equality in supporting it. Equality is equity in such cases—being equally bound, they shall equally pay. 1 *Story's Eq.* 499; *Theobold on Principal and Surety,* ch. 11, § 283; *Swain* v. *Wall,* 1 *Ch. Rep.* 149.

The surety may take collaterals from his principal to indemnify himself against his liability; and if he brings an action against his co-surety for contribution, his holding such collaterals will not bar his recovery. *Done* v. *Walley,* 2 *Wels., H. & Gor.* 198; *Bachelder* v. *Fiske,* 17 *Mass. R.* 464.

But any collateral he may take will enure to the benefit of all the sureties; as soon as such collateral is taken by one of the sureties, all have an equal interest in it with himself. He has no right, without their consent, to deprive them of that which has once enured to their benefit; the proceeds of such collateral must be applied to the satisfaction of the joint debt.

In this case the collaterals were not only, in law, for the benefit of all the co-sureties—they not only enured for their benefit, but a portion of them were in fact for the benefit of Paulin by their very terms; the security was intrusted to two of the sureties for all. This was given up without the consent of Paulin. He was thus deprived, by the act of the plaintiff, of the indemnity intended by the principal debtor for his benefit; to give it up was to practise a fraud upon him, if done without his consent for that purpose. The opening does not charge fraud in fact upon Kaighn and Cooper, nor does it state that the securities given up would have been sufficient to indemnify; for aught that appears, they may have been of small value.

But the main question still remains to be settled—what is the effect of the relinquishment of these collaterals, the joint property of all the sureties, the precise value of which is unknown, without the consent of the joint owners. It did not change the liability of the ferry company to Paulin, if he had been compelled to pay the debt, nor did it, in any way, affect the right of Paulin to his action for contribution against Kaighn and Cooper; the liabilities growing out of the relation of co-sureties still remained the same.

Where time is given by a valid contract upon a sufficient consideration by the creditor to the principal debtor, the surety is discharged, because the original contract upon which he was surety is materially modified without his consent; the contract upon which he was surety no longer exists. *Bell* ads. *Martin,* 3 *Harr.* 171, and cases

there cited. In the case now before the court, the act of Kaighn in no way affected the original contract of suretyship, as we have already seen. It is alleged that the act of Kaighn absolved Paulin from all liability to contribute to him, because he gave up securities to which Paulin had a right to resort for reimbursement. If the act had been fraudulent in fact, there can be no doubt but that it would discharge Paulin from all liability to Kaighn; if Kaighn had received anything, as the liquidated price or value of the securities, he would, as we have seen, been obliged to credit it upon the debt paid by him; if he had retained them, he would have done so for the joint benefit of all the sureties.

In the case of *Woodruff* v. *The Insurance Co.*, 2 *Dutcher* 557, Chancellor Williamson, delivering the opinion of the Court of Errors, seems to have held that where an insurer had a right of subrogation to certain collaterals held by the insured, that if the insured relinquished any of them he must deduct their value from the insurance money. What was said by the learned Chancellor was said *arguendo*, and was unnecessary for the decision of the case. If he meant to be understood as holding that this deduction could be made in a court of law in an action for the insurance money, either by way of set-off, payment or forfeiture *pro tanto*, I cannot yield my assent to the doctrine; it is utterly without support, either upon principle or authority. A court of law cannot thus convert a mere breach of an equitable right without express proof of injury occasioned thereby, and the amount of that injury into a debt, to be set off, or treat it as a payment made.

If the securities still remained in the possession of Kaighn, notwithstanding that he would still be entitled to contribution, and to maintain his action for it, and Paulin, upon payment of his contributive share, could then, by bill in equity, enforce his right of subrogation to these securities, or if they had been given up without his

consent, and the right of subrogation be a right which can be recognized in a court of law, brings his action on the case for the damages sustained by the violation of that right, these damages are necessarily unliquidated, and, as such, not the subject matter of a set-off, and *a fortiori*, could not be treated as payment. *Smock* v. *Warford*, 1 *South.* 306; 2 *Parsons on Con.* 245.

I am of opinion that the relinquishment by Kaighn of the securities held by him without fraud, although without the consent of Paulin, did not discharge the liability of Paulin to contribution.

The defendant opened a further defence, in substance, that Kaighn, with others, had signed an agreement not under seal, dated the 29th December, 1855, by which the signers agreed to receive, in lieu of their respective debts, certain bonds to the amount thereof, secured by a mortgage upon the property of the company, upon certain terms therein expressed; and that certain creditors, who had signed the agreement, did receive the bonds mentioned in it; and that it was part of the agreement that all of the indebtedness of Kaighn, Cooper, and the other creditors who signed it, that time should be given upon such indebtedness funded as aforesaid, and that Kaighn was bound to fund the indebtedness for which this suit was brought.

One of the terms upon which this agreement was to be binding upon the signers was, that all the other creditors of the company, except certain second mortgage creditors, would accept these bonds in lieu of their indebtedness, except certain small creditors, who were to be paid after giving a credit of six months.

The defendant did not offer to show that all the creditors signed this agreement; on the contrary, Paulin himself never signed it, and was not bound by it.

It was an agreement not amounting to a release; its terms were never complied with; Kaighn never was bound to fund his indebtedness under its provisions; at the

most, it was a mere agreement to accept bonds in lieu of his claims upon the company upon certain conditions. The debt of the company to Kaighn was never either paid or released by force of that agreement.

There was no valid agreement to give time to the company —none which the company were ever in a condition to enforce against Kaighn ; his rights against them remained unchanged. Paulin's remedy against the company was in no way changed by the action of Kaighn ; the whole arrangement remained incomplete, and became, by non-compliance with its stipulations, a dead letter.

The opening of the defendant in regard to that agreement, and the action of the plaintiff under it, fall far short of showing a legal defence to this action.

There can be no doubt but that if that agreement to fund the debt had been signed by all the necessary parties, and the conditions upon which it was to be binding had been performed, so that it was capable of being enforced by the company against all who signed it, it would have materially changed the position of Paulin ; but these events never happened—the agreement never did become binding upon any of the signers, and nothing done under it by Kaighn ever affected his rights against Paulin.

The judgment must be affirmed.

Reversed, 5 *Dutch.* 480.