Glenn A. **REITMEIER**, Plaintiff,

v.

Kathryn Jean **KALINOSKI**, Defendant.

Civ. A. No. 85–2205.

United States District Court,
D. New Jersey,
Civil Division.

April 2, 1986.

Sterns, Herbert & Weinroth, P.A. by Lawrence F. Gilman, Princeton, N.J., for plaintiff.

Calnan & Orloski, P.C. by Richard J. Orloski, Allentown, Pa., J.L. Thorpe, Camden, N.J., for defendant.

OPINION

BARRY, District Judge.

Plaintiff, Glenn A. Reitmeier, and Defendant, Kathryn J. Kalinoski, were engaged to be married when, on August 10, 1984, they purchased a lot of real property with a dwelling place upon it in Ewing Township, New Jersey. On that date they also executed an agreement contingent upon their marriage attempting to set forth their respective interests in that and other property. Plaintiff and defendant subsequently broke off their engagement and this court is now called upon to determine the appropriate disposition of the Ewing Township property.

It is undisputed that plaintiff paid the entire downpayment, the costs of closing, and other associated costs and that plaintiff and defendant took out a mortgage in both of their names for the remainder of the payment due. It is also undisputed that plaintiff paid for all of the mortgage payments aside from the first which defendant may have paid in part. Similarly, it is undisputed that defendant contributed to certain fixtures on and repairs of the property. Defendant never lived on the property and, since the termination of their relationship, plaintiff has lived there, although whether this was pursuant to an agreement of the parties (according to defendant) or simply happened (according to plaintiff) is unclear. Be that as it may, it is uncontroverted that on the face of the deed plaintiff and defendant are tenants in common, based on the presumption of tenancy in common enunciated in N.J.S. 46:3–17. *Mandelbaum v. Weiss*, 11 N.J.Super. 27, 77 A.2d 493 (App.Div.1950).

On February 15, 1985, plaintiff commenced an action in the Superior Court of New Jersey, Chancery Division, Mercer County, seeking: a. partition of the Ewing Township property (apparently in the alternative to other requested relief), b. a determination that defendant had no interest in or title to the property, c. a determination that plaintiff alone had interest in and title to the property, subject to the mortgage, d. an order mandating that defendant deliver

to plaintiff a deed conveying to plaintiff any interest in the land she might have or, in the alternative, for an order of the court to the same effect, and e. costs.

Defendant counterclaimed for: 1. fifteen counts of assault and battery, 2. a declaratory judgment that the August 10, 1984 agreement as to the disposition of the property is without force and effect, 3. partition of Ewing Township property with one half of the proceeds to go to her, and 4. damages for instances of personal injuries allegedly caused to her as a passenger in cars driven by plaintiff. Defendant removed this action to federal court pursuant to this court's diversity jurisdiction, as defendant resides in Pennsylvania.

Plaintiff now moves this court for summary judgment with reference to the counts related to the Ewing Township property and moves to strike the jury demand as to those matters which remain after disposition of the summary judgment motion.

Before a court may grant a motion for summary judgment, there must be no genuine issue of material fact and the movant must be entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 362 n. 16, 93 S.Ct. 1652, 1657 n. 16 (1973); *Jersey Central Power & Light Co. v. Lacey Township*, 772 F.2d 1103 (3d Cir.1985). In ruling on a motion for summary judgment, the court's function is not to resolve factual issues but rather to determine whether any genuine material factual issue exists. *Adickes v. Kress*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142, 155 (1970); *Jersey Central Power & Light Co. v. Lacey Township, supra.* The court must draw all inferences of fact against the movant and in favor of the party opposing the motion. *Adickes v. Kress, supra; Reilly v. Firestone Tire and Rubber Co.*, 764 F.2d 167 (3d Cir.1985). However, Rule 56(e) does not allow a party resisting a summary judgment motion to rely merely upon bare assertions, conclusory allegations or suspicions. *Jersey Central Power & Light Co. v. Lacey Township, supra.*

Once appropriate evidence has been submitted, controversy as to the facts may not be proved merely by reliance on the pleadings, but only upon affidavits or other sworn and similarly reliable statements: "depositions, answers to interrogatories, or further affidavits." Fed.R.Civ.P. 56(e); *Reilly v. Firestone Tire and Rubber Co., supra.*

I

## DECLARATORY JUDGMENT AS TO THE AGREEMENT

On August 10, 1984, the same day as the deed over the property at issue was signed, plaintiff and defendant signed an agreement that purported, *inter alia,* to delineate plaintiff's and defendant's respective percentages of ownership in the property. The agreement stated, in part, that plaintiff's percentage of ownership was to be the greater of 61.36% of the net value or $25,000 plus 50% of net remaining value of the property; defendant's percentage was to be the lesser of 38.64% of the net value or 50% of the net value less $25,000. Net value was defined as the sales price in a bona fide sale, or the fair market value less outstanding mortgages, liens and cost of sale in a disposition of the property in other than a bona fide sale. The agreement stated that all future payments were to be paid out of joint funds. Which future payments were contemplated in the agreement is uncertain, but presumably at least mortgage payments and taxes were intended. The agreement is silent as to the allocation of the respective shares of such joint payments.

In her counterclaim, defendant seeks a declaration, pursuant to 28 U.S.C. § 2201, that the agreement is invalid for several reasons: a. the marriage contemplated in the agreement never occurred; b. plaintiff failed to make full disclosure to defendant of all facts material to the agreement; and c. defendant was not represented by an attorney. In her counterclaim, she represented that a 50% share in the property was a gift (in effect a *donatio ante nupti-*

*as* ), and that she was misled into signing the agreement. Upon deposition, she admitted that no gift was contemplated and that she thought that the agreement was a fair representation of the parties' understanding as to the division of the property. In her brief and affidavit upon this motion, defendant now contends that she was misled into signing the agreement by plaintiff's representation that the agreement represented in writing a separate oral agreement that plaintiff's interest in the property was to be two-thirds and defendant's interest was to be one-third. Finally, in oral argument upon the motion, defendant's counsel admitted that the one-third/two-thirds division articulated by defendant in her affidavit was simply a rough estimate of the terms of the disposition embodied in the agreement.

Plaintiff, on the other hand, contends that the agreement was valid, but that it is of no effect because: 1. the law holds that in a case in which a deed is made to co-tenants, their respective portions are indicated by their shares of the purchase price; and 2. plaintiff has paid all the mortgage payments and, as defendant seeks equitable relief, in order to achieve the result she seeks, she must do equity (i.e. offer to pay a share of the mortgage payments). Plaintiff contends, moreover, that even if the agreement be invalid, it is an indication of the intent of the parties.

Defendant words her objection to the agreement in the form of a condition precedent (i.e. marriage) to the contract being fulfilled. A conditional promise becomes absolute only upon performance, and therefore the contract entirely conditioned upon the occurrence or nonoccurrence of a particular event is not binding until the condition manifests itself. *Duff v. Trenton Beverage Co.*, 4 N.J. 595, 73 A.2d 578 (1950). However, the agreement on its face does not explicitly condition the contract upon the marriage of the parties. It states merely that the agreement is being made in contemplation of the marriage. When fairness and justice require, the court may find a constructive condition in the contract.

*Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 207 A.2d 522 (1965). In this instance, however, there seems to be no reason why a constructive condition precedent of marriage should be imposed in this agreement, as there is no indication that the parties would have disposed of their interests in the property differently before marriage than during or after marriage.

The parties fail to note, however, that the consideration for the agreement appears to have been the contemplated marriage, no other form of consideration being recited therein. Normally, in New Jersey a sealed contract does not need consideration. *Zirk v. Nohr*, 127 N.J.L. 217, 21 A.2d 766 (Ct.E. & A.1941); *Minch v. Saymon*, 96 N.J.Super. 464, 233 A.2d 385 (Ch.Div. 1967). However, in this case, although the agreement recites that "the parties have set their hands and seals" to it, no seal appears thereon, but merely the signatures of the parties and the witnesses. The mere recital of sealing, without a seal or other device by way of seal, does not constitute a seal. N.J.S. 1:1–2.1; *Fidelity Union Trust Co. v. Fitzpatrick*, 134 N.J.L. 250, 46 A.2d 837 (Ct.E. & A.1946); *Continental Purchasing Co., Inc. v. Daniels*, 123 N.J.L. 33, 7 A.2d 887 (Sup.Ct.1939); *Beneficial Finance Co. v. Dixon*, 130 N.J.Super. 508, 327 A.2d 695 (Dist.Ct.1974).

■ The agreement, however, was made, "in consideration of the mutual covenants, provisions, promises and terms contained herein." Among the provisions is one that, "the parties contemplate marriage to each other, such marriage to be solemnized in the near future." Such a recital of consideration would appear to be sufficient to bring this agreement within that class of contracts for which marriage is in part the consideration. *Herr v. Herr*, 13 N.J. 79, 85–87, 98 A.2d 55, 58–59 (1953); *Gilbert v. Gilbert*, 66 N.J.Super. 246, 251–52, 168 A.2d 839, 842 (App.Div.1961). Because the marriage contemplated was never solemnized, however, there is no valid considera-

tion, and the agreement is therefore void for want of consideration.[1]

However, although the agreement is void, it is not entirely without effect. Plaintiff contends that the statement in the deed conveying the property to both parties was not fully integrated in that it did not apportion the property among the parties as they had intended. Plaintiff seeks to introduce the agreement as showing the intent of the parties as to the unintegrated portion of the agreement. Under New Jersey law there is a rebuttable presumption that a deed to several people that does not recite their respective portions in the property is intended as a division among them equally. When the deed is ambiguous and contested, extrinsic evidence may be considered. *Sisco v. New Jersey Bank*, 151 N.J.Super. 363, 376 A.2d 1287 (L.Div.1977), *rev'd in part on other grounds, aff'd in relevant part* 158 N.J.Super. 111, 385 A.2d 890 (App.Div.1978); *Bittle v. Clement*, 54 A. 138 (N.J.Ch.Ct.1903). Even if plaintiff's contention that he has evidence to rebut the presumption were not enough to permit parol evidence as to the intent of the parties, defendant, as evidenced by her deposition and subsequent (apparently contradictory) affidavit, also admits that the deed is not a full integration of the parties' intention as to their respective shares in the property. Thus, to the extent that parol evidence is necessary to determine the intent of the parties as to their shares in the property in the deed, said deed being ambiguous, in accord with *Bittle v. Clement, supra,* the agreement of August 10, 1984 should be considered as evidence along with the other statements of the parties. *Hofer v. Carino*, 4 N.J. 244, 72 A.2d 335 (1950). In addition, it is apparently still good law in New Jersey that the parol evidence rule does not apply to parties on the same side of a contract, in this case the deed. *Paulin v. Kaighn*, 27 N.J.L. 503 (Sup.Ct.1859), *rev'd on other grounds* 29 N.J.L. 480 (Ct.E. & A.1861); *Apgar v. Hiler*, 24 N.J.L. 812 (Ct.E. & A.1854).

Parenthetically, the court notes that defendant's affidavit and deposition contradict her answer and counterclaim with reference to plaintiff's alleged gift of one half of the property to her. The court notes that her most recent statement may act as a bar to subsequent invocation of the gift contention. *See Gurzo v. American Smelting & Refining Co.*, 132 N.J.L. 485, 41 A.2d 6 (Ct.E. & A.1945); *Powell v. Mayo*, 27 N.J.Eq. 440 (Ch.Ct.1876). Moreover, *inter vivos* gifts are disfavored at the common law and there must be strict compliance with the requirements for such gifts. *In re Dodge*, 50 N.J. 192, 234 A.2d 65 (1967). The requirements for an *inter vivos* gift are: 1. unequivocal donative intent on the part of the donor (no such donative intent appears given plaintiff's proffer of the agreement executed contemporaneously with the deed); 2. an actual or symbolic delivery of the subject matter of the gift (which is not alleged here); and 3. an absolute and irrevocable relinquishment by the donor of ownership and dominion over the subject matter of the gift to the extent possible (which did not occur as defendant never lived at the property in question) and even a partial surrender of the property in joint names may be insufficient. [*See Stiles v. Newschwander*, 139 N.J.Eq. 1, 49 A.2d 572 (Ch.Ct.1946) *rev'd on other grounds* 140 N.J.Eq. 591, 54 A.2d 767 (Ct.E. & A.1947)]; *In re Dodge, supra; Canova v. Canova*, 146 N.J.Super. 58, 368 A.2d 971 (Ch.Div.1976).

Moreover, there is no relationship by blood or marriage (as opposed to contemplated marriage) that might raise the presumption of a gift. *Exadaktilos v. Cinnaminson Realty Co., Inc.*, 167 N.J.Super. 141, 400 A.2 554 (L.Div.1979), *aff'd* 173 N.J.Super. 559, 414 A.2d 994 (App.Div. 1980). Neither is there any suggestion that defendant in any way detrimentally relied upon any representation of a gift [*See Sommers v. Zuck*, 139 N.J.Eq. 245, 50 A.2d 648 (Ch.Ct.1947)] other than in entering into the mortgage which, according to the answer of the mortgage company (orig-

---

**1.** Therefore, it is not necessary to reach the issue of plaintiff's alleged failure to inform defendant of certain facts and defendant's lack of legal representation. For a thorough discussion of those issues, *see Marschall v. Marschall*, 195 N.J.Super. 16, 477 A.2d 833 (Ch.Div.1984).

inally a non-diverse party to this action, subsequently relieved), such company is apparantly willing to reformulate to exclude defendant. Defendant will thus not be heard to argue that a one half interest in the property in question was a gift. For a case in which gifts considered joint property in a broken engagement were discussed in another context (a replevin action), see *Mandelbaum v. Weiss, supra.*[2]

Thus, although there is some difference between the parties as to their understanding of the agreement, that difference is not material because it does not affect the resolution of an issue with respect to any element of the claim or defense with reference to whether the agreement of August 10, 1984 is of any force or effect. *See British Airways Board v. Boeing Co.,* 585 F.2d 946 (9th Cir.1978); *SEC v. Research Automation Corp.,* 585 F.2d 31 (2d Cir. 1978). There is, therefore, no genuine issue of material fact and the parties are entitled to judgment as a matter of law. Summary judgment is entirely appropriate in declaratory judgment actions [*Japan Gas Lighter Assn. v. Ronson Corp.,* 257 F.Supp. 219 (D.N.J.1966)] and equitable actions generally (*Lemmon Pharmacal Co. v. Richardson,* 319 F.Supp. 375 (E.D.Pa. 1970)]. For the above reasons, as a matter of law, the agreement of August 10, 1984 is void for failure of consideration and to this extent plaintiff's motion is denied. However, the agreement is some indication of the intent of the parties as to their proportionate shares in the property at issue in the deed of the same date.

## II

### QUIETING TITLE

#### A

#### REQUISITES FOR QUIETING TITLE

Parts b. and c. of plaintiff's demand for relief sound in a prayer to quiet title. New Jersey does not rigorously distinguish between bills to quiet title (i.e. bills of peace) and bills to remove a cloud from title (i.e. bills *quia timet*), which makes pleading such causes somewhat easier. *Sheppard v. Nixon,* 43 N.J.Eq. 627, 13 A. 617 (Ct.E. & A.1887). Moreover, N.J.S. 2A:62–1 *et seq.,* "Actions to Quiet Title in General," obviates some of the common obstacles inherent in equitable suits, such as the requirement of a previous action at law determining title in a plaintiff's favor, a pending adverse action at law, and the strict requirement of peaceable possession. *McGrath v. Norcross,* 71 N.J.Eq. 763, 65 A. 998 (Ct.E. & A.1907); *City of Paterson v. Schneider,* 31 N.J.Super. 598, 107 A.2d 553 (App.Div.1954); *Nixon v. Walter,* 41 N.J.Eq. 103, 3 A. 385 (Ch.Ct.1886). An action to quiet title would seem to be what plaintiff seeks here in attempting to protect his title from legal injury. *Estate of Smith v. Cohen,* 123 N.J.Eq. 419, 196 A. 361 (Ct.E. & A.1938).

A suit to quiet title is essentially equitable in nature and, therefore, subject to equitable defenses. *Braue v. Fleck,* 23 N.J. 1, 127 A.2d 1 (1956). Among these defenses is that there is not a remedy in equity if there is a sufficient remedy at law. In this case, however, there appears to be no adequate legal remedy. Plaintiff is in possession of the property and, therefore, has available no legal action to challenge defendant's claim to the property. Defendant clearly does not wish to utilize legal remedies which would merely allow her to enter and use the property with plaintiff and, moreover, has not shown that she has been kept off that property. She seeks only a monetary settlement of her entitlement. Moreover, neither party contends that there is an adequate legal remedy which would remove the court's equity

---

**2.** Plaintiff's contention concerning the lack of effect of the agreement because he paid the full purchase price is discussed and dismissed *infra.* Plaintiff's other contention, *i.e.,* that the agreement ought not to be enforced because of plaintiff's payment of all mortgage payments has greater merit. Declaratory judgment, while not strictly an equitable remedy as it is statutory in origin, is essentially equitable in nature. *Dworman v. Morristown,* 370 F.Supp. 1056 (D.N.J. 1974). The effect of equity on the agreement which indicates the intent of the parties, however, is more properly discussed below.

jurisdiction, a fact which is ordinarily dispositive. *See Perlstein v. Pearce*, 12 N.J. 198, 96 A.2d 392 (1953). Because defendant raises no objection to the action to quiet title, and because it appears that plaintiff meets the tests of N.J.S. 2A:62–1, I will consider the merits of plaintiff's claims.

Preliminarily, I note the burdens of proof in actions to quiet title *Robinson-Shore Development Co. v. Gallagher*, 41 N.J.Super. 324, 125 A.2d 1 (Ch.Div.1956), *supplemented* 43 N.J.Super. 430, 128 A.2d 884 (Ch.Div.1957), *aff'd* 45 N.J.Super. 507, 133 A.2d 353 (App.Div.1957), *rev'd on other grounds* 26 N.J. 59, 138 A.2d 726 (1958). Plaintiff must first prove peaceable possession, which he has done by the uncontroverted evidence that he resides at the property, has so resided for a considerable period and defendant has never sought to hinder plaintiff from so doing. Once plaintiff has proved peaceable possession, defendant must prove title which, as discussed above, she has done, at least to a portion of the property. Plaintiff must then demolish defendant's title or show the superiority of plaintiff's title. Plaintiff in this case fails to do so, as both plaintiff and defendant hold under the same muniment of title, the sole question being the proportion of their respective shares. Plaintiff cannot argue that defendant's title is demolished, for thereby his would be demolished as well. Neither can plaintiff argue that his title is legally superior to (as opposed to being physically larger than) defendant's, for to do so would be to contradict the face of the instrument with no evidence proffered to support such an understanding.

It is perfectly acceptable in an action to quiet title to determine the respective shares of tenants in common as well as to determine that one party alone is entitled to title and possession. *Bridgewater Leasing Co. v. Wollman*, 94 N.J.Super. 28, 226

A.2d 735 (App.Div.1967). It is different in an action in partition, which requires the parties to be co-tenants and to have some title in the property before such an action may be maintained. *Scott v. Scott*, 112 N.J.Eq. 195, 165 A. 727 (Ch.Ct.1933); *Hay v. Estell*, 18 N.J.Eq. 251 (Ch.Ct.1867). Plaintiff argues that the defendant has no interest in the property in question. It is, therefore, appropriate to determine whether the defendant has any rights in the action to quiet title for, if plaintiff's argument be accepted, this court need not reach the question of partition.

## B

### PROPORTIONATE SHARES

Plaintiff contends that he is entitled to the entire property by virtue of *Shroser v. Isaacs*, 28 N.J.Eq. 320 (Ch.Ct.1877) and *Bittle v. Clement, supra*. He argues that both cases stand for the proposition that when there is no specific mention in the deed as to the proportionate shares of tenants in common, they share in proportion to their contribution to the purchase money, even if that means that there would be no sharing as one party paid the entire purchase money. In both cases, there seems to be an indication that mortgage payments are considered a part of the purchase money. If such be the case, the question as to whether the defendant made any contribution to the first mortgage payment would be a genuine issue of material fact, as it is disputed by the parties. It is not necessary to reach that issue, however, for plaintiff's reading of *Shroser* and *Bittle* appears to be incorrect.[3]

Defendant asserts that *Shroser* and *Bittle* do not stand for the proposition that deeds to several people ambiguous on their face as to respective proportionate shares are to be construed as dividing the property according to respective contributions to

3. The court notes that there are strong arguments in other jurisdictions for the proposition that mortgage payments are not to be considered part of the purchase price in determining proportionate shares of tenants in common. *Anderson v. Anderson*, 137 Kan. 833, 22 P.2d 471

(1933), *reh'g denied* 138 Kan. 77, 23 P.2d 474 (1933); Annotation, "Presumption and proof as to shares of respective grantees or transferees in conveyance or transfer to two or more persons as tenants in common, silent in that regard," 156 Am.L.Rep. 515 (1945 & 1985 Supp.).

the purchase money. Rather, she maintains correctly, I suggest, that the cases stand instead for the proposition that parol evidence as to respective shares is allowable to prove the intent of the parties, and that such intent is controlling. The cases indicate that the ordinary presumption is that parties mentioned in a deed ambiguous as to their portions share equally. This presumption can be rebutted by parol evidence. The parol evidence introduced normally evinces a presumption that the parties' intent was to share in proportion to their contribution to the purchase money. It is for this proposition alone that *Shroser* and *Bittle* can be cited in this context. Indeed, sharing in proportion to purchase price contributions cannot be an irrebuttable presumption where, as here, it conflicts with the facts, *i.e.*, the parties intention to divide the property according to the void agreement of August 10, 1984 or according to an oral agreement of approximately that date. Moreover, the purpose of the presumption is to give effect to the intention of the parties. *See* "Presumption and Proof," *supra*.

Thus, *Shroser*, and more so *Bittle*, might well be considered to hold that tenants in common may share unequally. *See Sisco v. New Jersey Bank, supra*, the only case in modern times to cite either *Shroser* or *Bittle*, citing *Shroser* for this proposition. Plaintiff seems to cite *Shroser* for the proposition that the purchase price presumption can extend to the determination that he who pays the entire purchase price is entitled to the entire property, in spite of a recital in the deed of more than one name. In *Shroser* the court found that the plaintiff had paid the entire purchase price, all mortgage payments to the date of the parties' disagreement, and the price of all major improvements to the land before that date. Defendant contended that he had paid some small portion of the purchase price, a claim the court found incredible.

While the facts seem to parallel those in the case at bar, the court's sole citation to *Heyde v. Ehlers*, 10 N.J.Eq. 283 (Ch.Ct. 1854) and the court's reasoning indicates that *Shroser* is a different case from that at bar and stands for an entirely different principle. *Shroser*, as *Heyde*, found a resulting trust. A resulting trust is, in effect, a finding of a poor man's will or poor man's trust, wherein the intended settlor (a person ignorant of the law) puts certain property in the name of another (the intended trustee), or perhaps in the name of the settlor and the trustee jointly, the intent being that the trustee, who is better able, will look after the interests of the settlor. *Fidelity Union Trust Co. v. Mintz*, 125 N.J.Eq. 52, 4 A.2d 44 (Ct.E. & A.1939). *See* Restatement of Trusts 2d § 440 (1959). As always, the intent of the parties controls, *Matter of Rauch's Estate*, 167 N.J.Super. 497, 401 A.2d 271 (App.Div. 1979), even if it destroys a presumption. *Graham v. Onderdonk*, 33 N.J. 356, 164 A.2d 749 (1960). *See* Restatement of Restitution § 160 comment b (1937); Restatement of Trusts 2d § 441 (1959). The court in *Shroser* found that plaintiff had purchased the property and taken out the mortgage in the joint names of plaintiff and defendant in order to secure himself the benefits of family life, including board and washing, but that plaintiff was to be the owner of the property. The court used the extrinsic evidence of the purchase price to find a resulting trust of the whole property in light of the surrounding circumstances.

The court similarly found in *Bittle*, in which two brothers purchased a property contributing unequal amounts of the purchase price. As in *Shroser*, the court weighed the testimony of the parties, and indicated that summary judgment as to a resulting trust would be inappropriate unless the case were clear. The most that *Bittle* could stand for, insofar as plaintiff is concerned, is that in New Jersey the initial presumption that parties on the same side of a deed share equally determines the legal title. Subsequent evidence as to surrounding circumstances would result in the party who was to have the smaller share holding the balance between his intended share and his equal share in a resulting trust for and the equitable interest in the

other party. Actions to quiet title may determine the equitable as well as the legal interests in property. *Estate of Smith v. Cohen, supra, Malson v. Hoffman,* 42 N.J.Eq. 116, 7 A. 349 (Ch.Ct.1886). However, this construction seems unduly burdensome, and is not followed in other states, "Presumption and Proof," *supra.* Nevertheless there is a substantial difference between a resulting trust for an additional equitable part of the property as contemplated at the time of the delivery of the deed and a resulting trust for the whole property not contemplated at the time of the delivery of the deed. In the case at hand considering the mutual requests for partition discussed below, it is not necessary to reach the question as to whether New Jersey would consider unequal shares unmentioned in a deed a legal or equitable right.

Moreover, even an apparent resulting trust may be voided by a showing that the intent of the parties was obviously otherwise. *See Polombo v. Polombo,* 46 N.J.Super. 13, 136 A.2d 674 (Ch.Div.1957), in which a husband and wife purchased property in both their names, the wife paying the entire purchase price, taxes, mortgage payments, and upkeep for the property. The wife attempted to establish a case for a resulting trust in her favor. However, the court found, based on her direct testimony, that she had intended that her payments be a gift from her to her husband. Because her intent was that of gift, the intent controlled and the husband was found to have an interest in the property.

In the case at bar, however, plaintiff does not allege that at the time of the making of the deed he had defendant's name placed on the deed for some reason other than to have her as part owner. Neither does he controvert defendant's contention that he proffered the agreement of August 10, 1984 to her, and he argues as the alternative to his argument on the purchase price presumption that the agreement was valid, albeit now ineffective, and that he entered into it. The law looks with disfavor on resulting trusts as they are dehors the words of the deed. *Turro v.*

*Turro,* 38 N.J.Super. 535, 120 A.2d 52 (App.Div.1956). In the case of a resulting trust or tenancy in common one must look to the surrounding circumstances to establish the intent of the parties. *Mandelbaum v. Weiss, supra; Strong v. Strong,* 134 N.J.Eq. 513, 36 A.2d 410 (Ch.Ct.1944), *aff'd* 136 N.J.Eq. 103, 40 A.2d 548 (Ct.E. & A.1945), *pet. for rev. dismissed* 136 N.J.Eq. 361, 42 A.2d 214 (Ch.Ct.1945), *aff'd* 137 N.J.Eq. 537, 45 A.2d 672 (Ct.E. & A.1946). The surrounding circumstances in this case as indicated by the pleadings, the affidavits of both parties, and the deposition of defendant lead to the conclusion that plaintiff and defendant intended a tenancy in common as to the property. Their misfortunes subsequent to their entry into the deed have no import as far as the creation of a resulting trust. *Strong v. Strong, supra.* It is solely the intent of the parties at the time of the delivery of the deed that counts. Subsequent actions are only of import insofar as they shed light on the parties' intent at the time the contract was made.

In an action to quiet title where a plaintiff seeks to cancel an instrument (in this case a deed) he must show clearly, free from all reasonable doubt, that he is entitled to such relief. *Shotwell v. Shotwell,* 24 N.J.Eq. 378 (Ch.Ct.1874). In view of the understanding of the precedents of *Shroser* and *Bittle* in context, it would appear that plaintiff here fails to meet his burden of proof to upset the clear statement of the deed that both he and defendant hold title to the property in question.

It would thus appear that to the extent that plaintiff argues resulting trust, that argument fails and he is relegated to his alternative position that the agreement of August 10, 1984 indicates the intention of the parties as to their proportionate shares in the tenancy in common at the time the deed was delivered. Plaintiff argues that the Statute of Frauds, N.J.S. 25:1–5, prevents defendant from arguing that there was a previous oral agreement as to a one-third/two-thirds division that embodies the true intent of the parties. The posi-

tions of plaintiff and defendant here both appear to have some merit, and both argue to their own possible detriment.

Joint ventures for the purchase of real estate admittedly fall within the Statute of Frauds. *Silberman v. Angert,* 101 N.J.Eq. 477, 132 A. 529 (Ch.Ct.1927); *Grant v. Steenland Construction Co.,* 99 N.J.Eq. 82, 135 A. 850 (Ch.Ct.1926), *aff'd* 100 N.J.Eq. 566, 135 A. 917 (Ct.E. & A.1927); *Partridge v. Cummings,* 99 N.J.Eq. 14, 131 A. 683 (Ch.Ct.1926). However, defendant presses the alleged oral agreement not for the enforcement of the joint venture, but as an indication of the intent of the parties as to their respective shares in the property in accord with the ambiguous clause in the deed. This parol evidence is as admissible as to that question as the void agreement proffered by plaintiff, for the reasons discussed above. Any discrepancy between written and oral extrinsic evidence goes to the weight of the evidence, not to its admissibility. *See Silverstein v. Dohoney,* 32 N.J.Super. 357, 108 A.2d 451 (App.Div.1954), *aff'd sub nom. Silverstein v. Keane,* 19 N.J. 1, 115 A.2d 1 (1955).

Defendant admitted at her deposition that the agreement of August 10, 1984 was both fair and an appropriate representation of her understanding as to the division of proceeds from the property in the event of sale. At oral argument, defendant's counsel admitted that the language in the one-third/two-thirds oral agreement discussed in defendant's affidavit was in fact language of estimate or approximation, rather than language of specific percentages. Counsel further admitted that this language of approximation in fact referred to

the division according to the agreement of August 10, 1984, under which defendant could have received up to 38.64% of the value of the property, which is greater than the one-third interest claimed in her deposition. This admission makes defendant's affidavit consistent with her deposition in this regard and demonstrates to a legal certainty that the agreement of August 10, 1984 accurately represented the intent of the parties as to their respective shares in the property at the time the deed was signed.[4]

■ Finally, even if counsel's admissions were insufficient to reconcile defendant's affidavit with her deposition in which she admitted that the agreement of August 10, 1984 was a fair representation of the understanding of the parties, an affidavit contradicting a previous deposition may be disregarded for summary judgment purposes. *Dudo v. Schaffer,* 91 F.R.D. 128 (E.D.Pa.1981).

■ Therefore based on the evidence before me, I shall grant summary judgment quieting title in the parties in accord with their respective shares as set out in the agreement of August 10, 1984.

### III

### PARTITION

■ As plaintiff's action to quiet title in himself alone fails, he would seem then to request partition between himself and defendant.[5] Defendant's third counterclaim also requests partition, with her to receive one half the property or the proceeds from its sale. It should be noted that in New Jersey, and as a matter of general equity, mortgagees are not necessary parties in a

---

**4.** For the binding nature of admissions of fact against parties by their attorneys, see *Glick v. White Motors, Co.,* 456 F.2d 1287 (3d Cir.1972); *Childs v. Franco,* 563 F.Supp. 290 (E.D.Pa.1983). For the equivalence of admissions in a brief or at oral argument to admissions on file for the purposes of summary judgment, see *Proctor v. Sagamore Big Game Club,* 265 F.2d 196 (3d Cir.1959), *cert. denied* 361 U.S. 831, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959), 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2723 at 65 (1983 and 1985 supp.). For the admissibility of admissions in summary judg-

ment motions, see *Jersey Central Power & Light Co. v. Lacey Township,* 772 F.2d 1103 (3d Cir. 1985); *Reilly v. Firestone Tire and Rubber Co.,* 764 F.2d 167 (3d Cir.1985).

**5.** *See Scott v. Scott, supra; Woglom v. Kent,* 69 M.J.Eq. 469, 61 A. 9 (Ch.Ct.1905); *Hay v. Estell, supra.* As to the determination of respective shares in partition proceedings, see J. Story, Commentaries on Equity Jurisprudence § 651 at 688 (11th ed. 1873).

partition proceeding, although they are proper parties if they wish to intervene. *Low v. Holmes,* 17 N.J.Eq. 148 (Ch.Ct. 1864); *Speer v. Speer,* 14 N.J.Eq. 240 (Ch. Ct.1862); 4 J. Pomeroy, Equity Jurisprudence § 1387 at 1016 (5th ed. 1941). Therefore, the withdrawal of the bank need not be addressed here.

In New Jersey partition is primarily a matter of statute. N.J.S. 2A:56–1 *et seq., Newman v. Chase,* 70 N.J. 254, 359 A.2d 474 (1976). Nevertheless, the courts retain their inherent equitable jurisdiction over partition as well. *Newman v. Chase, supra; Grassman v. Badgley,* 90 N.J.Eq. 203, 106 A. 373 (Ch.Ct.1919). Partition, whether statutory or inherent, is an equitable matter. *Newman v. Chase, supra. See* Restatement of Property Ch. 11, Topic 1 introductory note (1936). As between tenants in common, partition may normally be had as a matter of course.[6] *Id., Drachenberg v. Drachenberg,* 142 N.J.Eq. 127, 58 A.2d 661 (Ct.E. & A.1948). *See* J. Story, Commentaries on Equity Jurisprudence § 648 at 686 (11th ed. 1873). However, in certain circumstances, such as the circumstance in which a family will be put out of its home by the sale in partition, a bill for partition will be denied. *Newman v. Chase, supra.* The court in *Newman* noted this principle in its novel decision based on general equitable principles and distinguished previous precedents which held that partition must be granted whenever a common owner requests it. *Id.* However, for a discussion of an ancient precedent that partition in equity is discretionary with the court, see J. Story, Commentaries on Equity Jurisprudence § 653 at 689–90 (11th ed. 1873).

This refusal of partition could have been considered an extension of the dictum in an earlier opinion. "All real estate, however valuable, except castles, which were necessary for the defence of the realm, were liable to partition at common law." *Bent-*ley v. Long Dock Co., 14 N.J.Eq. 480 (Ch. Ct.1862), *aff'd sub nom. Manners v. Bentley,* 15 N.J.Eq. 501 (Ct.E. & A.1863). It is an ancient principle that *domus sua cuique est tutissimum refugium* —"a man's house is his castle." 3 Co.Inst. 162 (Co.P. C.1644). *See Payton v. New York,* 445 U.S. 573, 596, 100 S.Ct. 1371, 1385, 63 L.Ed.2d 639 (1980); *Semayne's Case,* 5 Co. Rep. 91, 92 (K.B.1603). It would therefore appear that the combination of these principles could be used to refuse partition of a home. However, the Supreme Court in *Newman* cited *Bentley* only for the general proposition that partition must be had on request, and not for the exception in dictum, so it is necessary to carry the analysis further.

The case at bar is distinguishable from *Newman v. Chase* on several grounds. The situation in *Newman* involved a tenancy by the entireties in which one of the tenants was adjudged a bankrupt and his share purchased at a judicial sale. In the case at hand, plaintiff is single, a tenant in common both as to his co-tenant and the outside world, and holds title equal in date to that of his co-tenant. More important, unlike in *Newman* in which the defendant opposed the remedy of partition, here both parties request partition. The property in question being a single dwelling and the surrounding land, it is not easily subject to partition, and thus would normally fall under N.J.S. 2A:56–2, i.e. sale with the proceeds divided between the co-tenants. *See* Restatement of Property § 178 (1936). Defendant would apparently acquiesce in such a partition. Plaintiff, on the other hand, currently resides at the property in question, desires to stay there, and is willing to reimburse plaintiff for the personalty she contributed to the property. It would appear, therefore, that plaintiff's request in this case—partition, with plaintiff remaining in possession of the entire property and

---

**6.** This is so because tenants in common are seized *per my et non per tout,* by the part and not by the whole, whereas joint tenants are seized *per tout et per my,* by the part and by the whole, and tenants by the entireties are seized *per tout et non per my,* by the whole and not by the part. *Newman v. Chase, supra* 70 N.J. at 262 n. 5, 359 A.2d at 478 n. 5; *Gery v. Gery,* 113 N.J.Eq. 59, 166 A. 108 (Ct.E. & A.1933).

reimbursing defendant for certain costs—is one of novel impression in New Jersey.

All cases subsequent to *Newman v. Chase*, aside from *Greco v. Greco*, 160 N.J. Super. 98, 388 A.2d 1308 (App.Div.1978), deal with tenancies by the entireties or bankruptcy, often in the context of divorce, and are therefore not entirely on point here. *See e.g. Interchange State Bank v. Riegel*, 190 N.J.Super. 139, 462 A.2d 198 (App.Div.1983); *Matter of Loeber*, 12 B.R. 669 (Bankr.D.N.J.1981). *Greco* was a dispute between heirs, in which the court upheld the well-established principle that at the creation of a co-tenancy (in this case by will) or by subsequent agreement of the co-tenants, a tenancy in common might be reserved from partition, citing *Newman* generally for the broad equitable powers of the court in partition and for the proposition that there is no absolute right to partition.

Courts in equity have traditionally allowed an owelty, whereby a party receives more than his fair share of a property not readily divisible in exchange for monetary compensation to the other party in partition. The principle of owelty is accepted in New Jersey. *Leonard v. Leonard*, 124 N.J.Super. 439, 307 A.2d 625 (App.Div. 1973). However, while owelty allows unequal division with monetary compensation, even reaching back to the most ancient precedents no case in New Jersey has squarely decided whether an entire property in dispute in partition might be granted to one party with an owelty to the other. *Ierrobino v. Megaro*, 108 N.J.Super. 556, 262 A.2d 17 (Ch.Div.1970), *Haulenbeck v. Cronkright*, 26 N.J.Eq. 159 (Ch.Ct.1875);

*Hall v. Piddock*, 21 N.J.Eq. 311 (Ch.Ct. 1871); *Hay v. Estell, supra; Brookfield v. Williams*, 2 N.J.Eq. 341 (Ch.Ct.1840). *See* 4 J. Pomeroy, Equity Jurisprudence § 1389 at 1017–18 (5th ed. 1941); J. Story, Commentaries on Equity Jurisprudence § 654 at 691–92 (11th ed. 1873).

However, even those ancient cases have recognized that a party to a partition who lives in and has made considerable improvements to, e.g., the mansion house on the estate may, upon request, have a partition awarding him that portion of the land with the house upon it and requiring an owelty if such a division exceeds his proportionate share of the property. *Doremus v. Doremus*, 8 N.J.Eq. 556 (Ch.Ct.1851), *Brookfield v. Williams, supra*. The court in *Leonard* allowed a partition with an owelty that kept intact each of the several tracts of land involved in the partition. For the ancient origin of this principle, see J. Story, Principles Jurisdiction § 657 at 696 (11th ed. 1873). The *Leonard* court also determined that where a sale was not necessary and the property was partible without a sale, physical partition was the superior method, even if it resulted in an unequal division of the realty with an allowance of owelty. *See Davidson v. Thompson*, 22 N.J.Eq. 83 (Ch.Ct.1871); 4 J. Pomeroy, Equity Jurisprudence § 1390 at 1018–19 (5th ed. 1941).

The New Jersey partition statute does not specifically allow for a partition leaving one party in full possession of the property and the other with a monetary allowance. N.J.S. 2A:56–1 *et seq.* Several other states do have such a statute.[7] Certain other

---

**7.** *See, e.g.,* Pa.R.Civ.P. 1563(b); *Cook v. Todd's Estate*, 249 Iowa 1274, 90 N.W.2d 23 (1958); *Morris v. Tracy*, 58 Kan. 137, 48 P. 571 (1897); *Catlin v. Catlin*, 60 Md. 573 (1883); *Darling v. Darling*, 85 Ohio St. 27, 96 N.E. 939 (1911); *Malone v. Malone*, 119 Ohio App. 503, 199 N.E.2d 405 (1963); *Rankin v. Coffer*, 85 Ohio L.Abs. 391, 174 N.E.2d 631 (Ct.App.1960); *Beaver v. Bates*, 109 Ohio App. 164, 164 N.E.2d 429 (1958); *Burch v. Brooks*, 15 Ohio C.C. n.s. 443 (1909), *aff'd mem.* 82 Ohio St. 441, 92 N.E. 1110 (1910); *Sun Investment and Loan Corp. v. McIntyre*, 537 P.2d 341 (Okla.1975); *Herron Trust v. Swarts*, 361 P.2d 280 (Okla.1961); *Beall v. Hare*,

405 Pa. 288, 174 A.2d 847 (1961); *McCall's Appeal*, 56 Pa. 363 (1868); *Merklein v. Trapnell*, 34 Pa. 42 (1859); *Dewar v. Spence*, 2 Whart. 211 (Pa.1837); *Kline v. Grayson*, 4 Binn. 225 (Pa. 1811); *Harbin v. Harde*, 141 Pa.Super. 1, 14 A.2d 866 (1940); *Swayne v. Lone Acre Oil Co.*, 98 Tex. 597, 86 S.W. 740 (1905); *Weenolsen v. Kamber*, 137 Vt. 540, 409 A.2d 577 (1979); *Billings v. Billings*, 114 Vt. 512, 49 A.2d 179 (1946); *Quillen v. Tull*, 226 Va. 498, 312 S.E.2d 278 (1984); *Shotwell v. Shotwell*, 202 Va. 613, 119 S.E.2d 251 (1961); *Thrasher v. Thrasher*, 202 Va. 594, 118 S.E.2d 820 (1961); *Roberts v. Hagan*, 121 Va. 573, 93 S.E. 619 (1917); *Corrothers v. Jol-*

states also allow by statute a homestead exemption from partition. Again, however, there is no such statute in New Jersey, and the courts have held that the tenancy by the entireties serves much the same purpose. *Newman v. Chase, supra* 70 N.J. at 265 n. 7, 359 A.2d at 480 n. 7 (majority opinion) and at 270, 359 A.2d at 482 (Pashman, J. concurring and dissenting). But here plaintiff is single and thus would not qualify for the homestead exemption even in those states with such legislation. He is certainly not entitled to relief from partition by reason of the special rules governing tenancy by the entireties as he holds by tenancy in common.

Under the court's inherent equitable powers, the Supreme Court of Georgia has allowed a party in partition so requesting to retain the property at its appraised value by paying its co-tenants an appropriate sum in compensation. *Henry Talmadge & Co. v. Seaboard Air-Line R. Co.,* 170 Ga. 225, 152 S.E. 243 (1930); *Clements v. Seaboard Air-Line R. Co.,* 158 Ga. 764, 124 S.E. 516 (1924). Georgia appears to be the only state to have reached this decision without express statutory authority.[8]

The courts of Rhode Island have developed, on the basis of a Rhode Island statute, the doctrine that the court in its discretion may refuse a sale in partition of property not readily divisible by metes and bounds. On the other hand, the Rhode Island cases hold that the courts have no discretion to refuse an actual division of the property by metes and bounds if that is possible. *Prior v. Prior,* 447 A.2d 1155 (R.I.1982); *Sleboda v. Sleboda,* 445 A.2d 276 (R.I.1982); *Matracia v. Matracia,* 119 R.I. 431, 378 A.2d 1388 (R.I.1977); *DeBartolo v. DiBattista,* 117 R.I. 349, 367 A.2d 701 (1976). This doctrine was first developed in *Bianchini v. Bianchini,* 76 R.I. 30, 68 A.2d 59 (1949). Although the homestead right is not specifically mentioned as a ground for utilizing this discretion, all of these cases have been disputes between former spouses as to jointly owned property, as is indicated by the most recent of this line of cases, *Frazier v. Frazier,* 472 A.2d 1227 (R.I.1984). *See also Grable v. Nunez,* 66 So.2d 675 (Fl.1953), where in a partition sale, the court allowed a co-tenant to purchase the property, receiving a credit for this proportionate share.

It has been held in other states, however, that in a partition with owelty there must be some actual partition of the land, with all parties receiving some portion. *Onderdonk v. Onderdonk,* 269 Md. 563, 307 A.2d 710 (1973) (stating that it strained the concept of owelty to allow a partition where some co-tenants would be dispossessed but reimbursed); *Hall v. Hall,* 250 Ala. 702, 35 So.2d 681 (1948); 68 C.J.S. "Partition" § 142 at 233 (1950 & 1985 Supp.). This

liffe, 9 S.E. 889 (W.Va.1889); 59 Am.Jur.2d, "Partition" § 132 at 877 (1972 & 1985 Supp.); Annotation, "Partition, construction and application of provision for assignment, to one of co-owners, of real estate not readily divisible," 169 A.L.R. 862 (1947 & 1985 Supp.).

**8.** *Newman v. Chase, supra* 70 N.J. at 264, 359 A.2d at 479 cites approvingly four non-matrimonial cases from other jurisdictions in which there was a slightly different remedy from that proposed in the present case. *Shell Oil Co. v. Seeligson,* 231 F.2d 14, 17 (10th Cir.1955) (applying Kansas law, stating that the right to partition is absolute, except as to mineral rights, where the court has discretion, but reversing an implicit refusal to partition); *Sadler v. Public National Bank & Trust,* 172 F.2d 870, 876 (10th Cir.1949) (applying Oklahoma law, similarly, but allowing partition); *Holland v. Shaffer,* 162 Kan. 474, 178 P.2d 235 (1947) (similarly, stating that it is a defense to partition that the partition would become an instrument of fraud and oppression, and that this defense is especially applicable in oil and gas cases, but allowing partition in that case); *Craig v. Maher,* 158 Or. 40, 74 P.2d 396 (1937) (denying partition and allowing an attorney who took a part interest in property as a fee only a monetary allowance to be charged as a lien on the property, when the relief requested was protested and inequitable, when alternate relief is requested in the pleadings). This special doctrine as to oil and gas rights was well developed in *Wolfe v. Stanford,* 179 Okla. 27, 64 P.2d 335 (1937). For a recent case citing this proposition, see *Mulsow v. Gerber Energy Corp.,* 237 Kan. 58, 697 P.2d 1269 (1985). J. Story, Commentaries on Equity Jurisprudence § 653 at 689–90 (11th ed. 1873), discusses the line of cases that state that partition in equity is discretionary with the court, and dismisses them as founded on false precedent and contrary to sound logic.

requirement rests on the ancient concept that realty is essentially different from personalty and cannot be properly compensated by monetary payment. Therefore, in a suit for partition in the chancery courts, at least some portion of the land—the sacral familial estate—would be awarded to each party. It is for this reason, partially, that statutes were enacted allowing the property in partition to be sold and the proceeds divided. N.J.S. 2A:56–1 *et seq.; Bentley v. Long Dock Co., supra; Osborne v. Edwards,* 11 N.J.Eq. 73 (Ct.Ch.1855). Even then, the proceeds from the sale retained the nature of realty as opposed to personalty with the proceeds considered as embodying the estate. *Geldhauser v. Schulz,* 93 N.J.Eq. 449, 116 A. 791 (Ct.E. & A.1922); *Langlotz v. Traverso,* 102 N.J.Eq. 144, 140 A. 229 (Ct.Ch.1928); *Riley v. Riley,* 92 N.J.Eq. 465, 113 A. 777 (Ct.Ch.1921); *Jacobus v. Jacobus,* 36 N.J.Eq. 248 (Ct.Ch. 1882); *Oberly v. Lerch,* 18 N.J.Eq. 346 (Ct.Ch.1867), *aff'd* 18 N.J.Eq. 575 (Ct.E. & A.1867). Even recently, courts have held that personalty cannot be divided under the statute, but only under general equity. *See Hotchkin v. Hotchkin,* 105 N.J.Super. 475, 253 A.2d 184 (Ch.Div.1969); *Martin v. Martin,* 106 N.J.Eq. 258, 150 A. 338 (Ct.Ch. 1930).

Thus, the law as to whether a partition might be ordered such that one co-tenant retains the entire property while the other is allowed monetary compensation appears to be an open question in New Jersey. In such a case, this court is required to decide the issue by predicting how the highest court of the state would rule if the issue were before it. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Mazzanti v. Merck and Co., Inc.,* 770 F.2d 34 (3d Cir.1985); *Herber v. Johns-Manville,* 785 F.2d 79 (3d Cir. 1986); *Erie Castings Co. v. Grinding Sup-*

*ply, Inc.,* 736 F.2d 99 (3d Cir.1984). The court should base its determination on lower state courts, scholarly treatises, the laws of sister states, and analogous precedents of the highest state court.

It would appear that the highest court of this state would permit a partition in which one party took the entire property and compensated the other with an owelty. This prediction is based on several factors. First, *Newman v. Chase, supra,* sets forth a liberal interpretation of partition which recognizes the equity in allowing a party to partition to remain in his home. Second, *Newman* cites approvingly to out of state decisions denying partition when the result would be inequitable. Third, equity will apply the interpretation of a statute that is indicative of justice and, "today's common feelings of humanity," even if the statute is no longer in force. *Lohmann v. Lohmann,* 50 N.J.Super. 37, 51, 141 A.2d 84, 93 (App.Div.1958) (discussed *infra*).[9] Fourth, *Leonard* acknowledged the right of a party in partition to request an actual physical division of the property as superior in equity to sale of the property in question. Fifth, *Leonard* allowed a partition with owelty that left the several separate tracts intact. Finally, *Newman v. Chase, supra* 70 N.J. at 263, 359 A.2d at 479, citing *Woolston v. Pullen,* 88 N.J.Eq. 35, 40, 102 A. 461, 462 (Ch.Ct.1917), declares:

> It is an established principle that a court of equity, in decreeing partition, does not act ministerially and in obedience to the call of those who have a right to the partition, but founds itself on its general jurisdiction as a court of equity, and administers its relief *ex aequo et bono,* according to its own notions of general justice and equity between the parties.

**9.** In *Lohmann v. Lohmann, supra* 50 N.J.Super. at 65–68, 141 A.2d at 101–03 (Haneman, J. concurring and dissenting), it is pointed out that many other states, based on either statute or common law, had provisions similar to that of a statute repealed by New Jersey, and indicates that the interests of justice and equity would be served by applying the provision. The statute in question, former N.J.S. 238–3 was not specifically replaced by another statute with different provisions, but was repealed as part of a general repeal of all former statutes not included within a new statutory revision, in the present case, the relevant statutes are those of sister states as discussed above.

In the case at hand the general equities weigh quite heavily with the plaintiff in allowing him to retain the house that has been his home for more than a year now, a piece of property that he has maintained and for which he has paid the vast majority of the mortgage and insurance costs and which he wishes to retain. Defendant, on the other hand, indicates no interest in the property *per se* (as opposed to its monetary value), has paid only minimal sums toward the purchase and maintenance of the property, and currently resides in Pennsylvania and apparently wishes to continue to do so.

## IV

### ACCOUNTING AND CONTRIBUTION

When property is partitioned, the court may take cognizance of and settle all conflicting claims of the parties arising from their relationship to the property, even though such claims may not, otherwise, have been cognizable. *Baird v. Moore,* 50 N.J.Super. 156, 141 A.2d 324 (App.Div. 1958); *Dorf v. Tuscarora Pipe Line Co., Ltd.,* 48 N.J.Super. 26, 136 A.2d 778 (App. Div.1957). *See* 4 J. Pomeroy, Equity Jurisprudence § 1389 at 1017–18, § 1421 at 1080–81 (5th ed. 1941); J. Story, Commentaries on Equity Jurisprudence § 655 at 692–93 (11th ed. 1873). In a partition in equity, the allocation of charges and credits between co-tenants is governed by basic justice and fairness. *Baird v. Moore, supra; Lipin v. Ziff,* 53 N.J.Super. 443, 147 A.2d 601 (Ch.Div.1959).

### A

### ACCOUNTING

The Statute of Anne, 4 & 5 Anne c. 16 § 27 (1705), substantially modernized the law of accounting, and made the remedy more just and more easily available. Previous to this legislation, the common law held that, absent ouster or specific agreement, a co-tenant in possession was entitled to all rents from third persons, profits from the land, and the value of his use or occupation, and co-tenants out of possession would not receive any compensation there-

for. The Statute of Anne allowed a co-tenant out of possession an action in account for rents and profits from third persons, and the courts have interpreted the statute as not allowing compensation for use and occupation by the co-tenant in possession, barring ouster or specific agreement among the co-tenants. *Lohmann v. Lohmann, supra; Baird v. Moore, supra.* It has also been held that ouster ordinarily will bar claims for contribution, unless there is also an action at account available. *Newman v. Chase, supra* 70 N.J. at 267, 359 A.2d at 481.

The Statute of Anne was incorporated into New Jersey law as early as 1794. It continued in statutory force until 1951 in the form of N.J.S. 2:38–3, when it was repealed along with all other portions of N.J.S. Title 2 not specifically reenacted in N.J.S. Title 2A. N.J.L.1951, c. 344, § 4. However, it appears that provisions of the Statute are covered by equitable principles even without the aid of legislation. 4 J. Pomeroy, Equity Jurisprudence § 1421 at 1081 (5th ed. 1941). *Lohmann v. Lohmann, supra* 50 N.J.Super. at 47–51, 141 A.2d at 90–93, contains a thorough exposition of the Statute of Anne as interpreted by courts generally and by New Jersey courts specifically, and applied the ordinary interpretation of the Statute of Anne as a common law principle. *See also Lohmann v. Lohmann, supra* 50 N.J.Super. at 54–68, 141 A.2d at 94–103 (Haneman, J. concurring and dissenting); *Baird v. Moore, supra* 50 N.J.Super. at 167, 141 A.2d at 329–30 (supporting the analysis of *Lohmann* ). *Newman v. Chase, supra,* cites *Baird v. Moore, supra,* as authority for the general principle that absent ouster, a co-tenant out of possession is not entitled to an accounting for use and occupation by the tenant in possession.

### 1

### OUSTER

■ There is thus a question in this case as to whether defendant was ousted from the premises. The court in *Newman v. Chase, supra* 70 N.J. at 267, 359 A.2d at 481, found ouster, which allowed it to

charge the co-tenant in possession for the rental value of her use and occupation of the premises. In determining there had been an ouster, the court considered the following facts significant: 1. The house in question was a single family house not susceptible of joint occupancy, and was fully occupied by the family of the co-tenant in possession. 2. The co-tenant in possession had refused requests for access to the property by the co-tenant out of possession. Neither of the above considerations applies in this case. The house in question, while a single family house, is susceptible of joint occupancy as plaintiff is a single person and the house is built to accommodate a family. Moreover, there is no showing here that defendant has requested, or would want to request, access to the property.

*Lohmann* is the most recent opinion fully discussing the New Jersey rules on determining ouster. The history of the ouster doctrine indicates that the New Jersey courts expand somewhat on the English common law definition of the term. By the nineteenth century, the New Jersey courts had already defined ouster as either an actual exclusion (the original meaning of ouster) or a constructive exclusion by a taking and keeping of possession by the co-tenant in possession of premises not capable of joint occupation. *Lohmann v. Lohmann, supra* 50 N.J.Super. at 48–49, 141 A.2d at 91, citing *Edsall v. Merrill,* 37 N.J.Eq. 114 (Ch.Ct.1883); *Davidson v. Thompson, supra.*

Actual exclusion would appear to include both physical exclusion (not present in the case at hand) and occupation of the whole estate (deemed "exclusive possession" in later cases) by the tenant in possession claiming it as his own. *Lohmann v. Lohmann, supra* 50 N.J.Super. at 48–49, 141 A.2d at 91, citing *Izard v. Bodine,* 11 N.J.Eq. 403 (Ch.Ct.1857). *But see Lohmann v. Lohmann, supra* 50 N.J.Super. at 68–69, 141 A.2d at 103–04 (Haneman, J. concurring and dissenting). However, such occupation is not an ouster unless first there is claim for access by one of the co-tenants out of possession that is refused by the tenant in possession. *Izard v. Bodine, supra.* In *Newman v. Chase, supra,* such a claim had been made. In *Tolen v. Tolen,* 2 N.J.Misc. 894, 126 A. 211 (Ch.Ct. 1924), as in the present case, no such claim was made. *Tolen* noted that the co-tenant in that case could have made such a claim, but failed to do so.

Exclusion would apparently include only claims that were openly adverse to the concept of co-tenancy. *Baird v. Moore, supra.* The court in *Lohmann v. Lohmann, supra* 50 N.J.Super. at 49, 141 A.2d at 91, further explicated the *Izard v. Bodine, supra,* standard for ouster as "possession attended by such circumstances as to evince a claim of exclusive right and a denial of the right of the other tenant to participate in the profits." *See Mastbaum v. Mastbaum,* 126 N.J.Eq. 366, 9 A.2d 51 (Ch.Ct.1939); *Maxwell v. Eckert,* 109 A. 730 (N.J.Ch.Ct.1920); *Edsall v. Merrill, supra.* In the case at hand, there are no profits involved as this is solely a domestic residence, and plaintiff first made the claim that he was entitled to the entire premises only as an alternative argument in the present case. Such a factual basis is insufficient to support a showing of an actual ouster.

As to constructive ouster, the mere fact that defendant does not wish to live with plaintiff on the premises is of no import. What counts is that she could physically live on the premises. For instance, the court in *Neubeck v. Neubeck,* 94 N.J.Eq. 167, 119 A. 26 (Ct.E. & A.1922) found no ouster where a wife left her husband and he continued to inhabit their previous marital abode. The husband was only required to reimburse the wife for the rent taken in from the boarder the husband took on after the wife left. It can hardly be argued, therefore, that mere animosity between the parties renders the premises incapable of supporting joint occupancy. Thus, in the present case there can be no claim of constructive ouster based on the supposition that the premises are not capable of joint occupancy, as in fact they are.

In *Baird v. Moore, supra* 50 N.J.Super. at 167, 141 A.2d at 329–30, the court found no ouster as, similarly to the present case, the co-tenant out of possession had left voluntarily and was legally entitled to resume possession at any time. To demonstrate ouster by a co-tenant in possession, the co-tenant out of possession must make a showing clearer and more decisive than would be required were he attempting to show ouster on the part of an outsider. *Ryerson v. Morris & E.R. Co.*, 53 F.Supp. 713 (D.N.J.1944). Thus, the facts in evidence do not support defendant's burden of demonstrating ouster in the case at hand.[10]

## 2

### USE AND OCCUPATION

█ The court in *Baird* discussed the modern tendency in certain jurisdictions to allow a tenant out of possession to recover for use and occupation as well as commercial rents and profits, even if there be no ouster. *Baird* decided, in light of its discussion of the cases, neither to allow nor disallow accounting for use and occupation as a general matter, but instead to weigh the possibility of awarding such sums on equitable grounds on a case by case basis. *Newman v. Chase, supra* 70 N.J. at 266–67, 359 A.2d at 480–81, characterized *Baird* as standing for the proposition that, as a general rule, absent ouster the tenant out of possession is not entitled to an accounting for use and occupation. In *Baird*, the court decided that the defendant was not entitled to the value of plaintiff's use and occupation because plaintiff had paid for all the costs of maintenance and repair, including insurance, mortgage, and tax payments, and had cared for the aged mother of plaintiff and defendant's decedent. In the case at hand all of these elements weigh in plaintiff's favor as against awarding defendant the value of plaintiff's use and occupation, aside from the fact that there was no caring for an aged mother on the property.

*Weh v. Weh*, 63 N.J.Super. 238, 164 A.2d 508 (Ch.Div.1960) used the *Baird* weighing approach and found that the co-tenant out of possession had no right to the rental value of the premises based on use and occupation. In that case, it was also found that the co-tenant out of possession, the former husband, owed a duty to support the co-tenant in possession his former wife. These considerations do not come into play in the present case. Based on the foregoing, defendant is not entitled to an accounting for plaintiff's use and occupation of the premises in question.

## B

### CONTRIBUTION

█ In reference to contribution, plaintiff has submitted evidence as to his mortgage payments to date ($16,096.10), the downpayment ($22,000), closing costs ($4,265.65), homeowner's insurance ($706.68), and water and sewerage bills ($109.13). The taxes for the property are escrowed to be paid with the mortgage. The unpaid principal balance on the mortgage is currently $87,544.73.

New Jersey courts normally allow co-tenants in possession a contribution from their fellow co-tenants for mortgage payments, taxes, necessary repairs, maintenance, carrying charges, and insurance. *Newman v. Chase, supra, Baird v. Moore, supra; Dorf v. Tuscarora Pipe Line Co., Ltd., supra; Weh v. Weh, supra; Mastbaum v. Mastbaum, supra.* In addition, when one co-tenant pays off a mortgage on the com-

---

**10.** Even were there no ouster, however, an agreement between the parties that the co-tenant in possession would pay the co-tenant out of possession for his use and occupation would be enforceable. *Baird v. Moore, supra.* In the present case, defendant claims there was an agreement between the parties that plaintiff could remain on the premises if he assumed all the costs of maintaining the property. Plaintiff, on the other hand, argues that there was no such agreement. However, even if there were such an agreement, there is no evidence at all that it would have included payment for use and occupation. The agreement must be express as to the reimbursement for the use and occupation of the co-tenant in possession. *Lloyd v. Turner*, 70 N.J.Eq. 425, 62 A. 771 (Ch. Ct.1906). Clearly, there is no such express agreement here.

mon property, or has the mortgage assigned to him, the court will treat the encumbrance either as still existing so as to enforce a contribution and subrogation or as extinguished, whichever best serves the interests of justice and the actual and just intent of the paying party. *Estate of Colquhoun v. Estate of Colquhoun*, 68 N.J. 558, 443 A.2d 1045 (1982); *Bien v. Buckholtz*, 113 N.J.Eq. 85, 166 A. 324 (Ct.E. & A.1933); *Wen v. Wen, supra; Errico v. Scopollitti*, 131 N.J.Eq. 125, 24 A.2d 384 (Ch.Ct.1942). This court will direct plaintiff to assume the mortgage in the present case, thus paralleling the situation in the above cases in a prospective manner. Because it serves the interests of justice to require plaintiff to assume the mortgage, it also serves the interests of justice to allow him to compel defendant to contribute for the additional risk which will devolve solely upon him.

There is some ancient authority for the proposition that interest is not compensable in contribution. *Buckelew v. Snedeker*, 27 N.J.Eq. 82 (Ch.Ct.1876). The modern cases cited above all take interest into account implicitly or explicitly, as a compensable item. There is also some older authority for the proposition that certain insurance is not compensable. *Houston v. Houston*, 39 N.J.Eq. 146 (Ch.Ct.1884). Again, the modern cases allow contribution for insurance. Finally, although the modern cases do not explicitly discuss downpayment and closing costs, they are in the nature of those costs for which compensation in contribution has been allowed, as they are items whereof the plaintiff has " 'removed a common burthen from the shoulders of himself and the defendant, and ... they are benefitted by it.' " *Baird v. Moore, supra* 50 N.J.Super. at 163, 141 A.2d at 327 citing Freeman Cotenancy and Partition § 322 at 377 (1874). *See* Restatement of Restitution § 105 (1937). Moreover, there is one older case that allows a co-tenant in a partition proceeding a lien on another co-tenant's proportionate share of the property for purchase money, in that case money paid to purchase the share of the other co-tenant.

*Campbell v. Campbell*, 11 N.J.Eq. 268 (Ch. Ct.1856).

The final opinion of the Superior Court, Chancery Division, on remand in *Newman v. Chase*, Docket No. C 473–74 (N.J.Super. Ct., Ch.Div., Ocean Co., Opinion of December 10, 1976 and Order of Jan. 5, 1977), allowed the co-tenant in possession an offset in the nature of contribution for payments of interest and principal on the mortgage, homeowners insurance, taxes, fire insurance, necessary repairs, and municipal utility assessments, although the decision referred in specific terms only to mortgage, tax, and insurance payments, and necessary repairs. The trial court had allowed a contribution for the sewerage bill, but not the water bill, as only the former was owed to a municipally owned utility company which could establish a lien on the property, while the latter was owed to a private utility.

It would thus appear that the vaguely denominated "necessary repairs," "maintenance," and "carrying expenses" referred to in the published opinions as compensable in contribution include at least municipal utility bills. Among older cases, *Thiele v. Thiele*, 57 N.J.Eq. 127, 40 A. 446 (Ch.Ct. 1898) allows contribution for water rents and the court in *Drumm v. Pavlick*, 141 N.J.Eq. 375, 57 A.2d 662 (Ch.Ct.1948) explicitly mentions water rents and would apparently have granted them as an expense compensable in contribution had it reached the issue in the present case, both water and sewerage bills were paid to Trenton Water Works, a municipal utility, and would therefore appear to be compensable. It is, therefore, not necessary to reach the question as to whether the distinction made by the trial court in *Newman v. Chase, supra*, between municipal utilities capable of enforcing a lien against the property and private utilities is still viable under New Jersey law.

Thus, it would appear that all of plaintiff's claims for contribution are meritorious.

Defendant has submitted three checks that for $200 relates, according to her dep-

osition testimony to the purchase of insurance and of certain movables on the premises, which purchase was necessary to complete the closing on the real property. The second, for $170, relates to items necessary for the parties' contemplated wedding. The third, for $1200, relates to a mortgage payment, taxes, and a refrigerator. With reference to these submissions, the check for $170.00 does not relate to the property in question, and defendant apparently does not press her claim to that sum. As to the remaining two checks, for $1,200.00 and $200.00, plaintiff has stipulated that he will repay the entire sum to defendant, although it is not certain that all the expenses she claims are necessarily subject to contribution. Moreover, even if they were, according to the above enunciated standards plaintiff need have reimbursed defendant only for his proportionate share of the expenditures, and not the entire sum. Plaintiff has thus "done equity" within the maxims of equity requiring that he who seeks equity must do equity. *Totowa Savings and Loan Ass'n v. Crescione*, 144 N.J.Super. 347, 365 A.2d 713 (App.Div. 1976); *Brick Township v. Vannell*, 55 N.J. Super. 583, 151 A.2d 404 (App.Div.1959). *See Baird v. Moore, supra* 50 N.J.Super. at 173, 141 A.2d at 332–33, emphasizing the importance of doing equity in partition.

For the above reasons, this court awards summary judgment on the partition action, allowing plaintiff to retain the property and requiring him to pay defendant an appropriate amount in compensation for her share in the property. The sum due defendant, however, is subject to a *pro rata* offset, in the nature of an equitable contribution, for plaintiff's assumption of the mortgage and for his mortgage payments, and payments of insurance and utility bills. Such offset in plaintiff's favor is, however, to be further offset in defendant's favor in the nature of an equitable contribution for defendant's purported expenditures for movables and the first mortgage payment, as plaintiff has acknowledged he is willing to repay defendant for these items. Plaintiff is directed to make a good faith effort to reformulate the mortgage as to the property to exclude defendant from liability thereon and, if necessary, to secure an alternate surety. If plaintiff complies with the terms of this opinion and the attached order, defendant should execute a deed over of all her interest in the property to defendant in order to give plaintiff clear title to the property. *See* J. Story, Commentaries on Equity Jurisprudence § 652 at 688–89 (11th ed. 1873).

## V

### CALCULATIONS

According to the formula of the August 10, 1984 agreement plaintiff is entitled to the greater of 61.36% of the net value or $25,000 plus 50% of net remaining value of the property, defendant is entitled to the lesser of 38.64% of the net value or 50% of the net value less $25,000. Net value is defined as the sales price in a bona fide sale, or the fair market value less outstanding mortgages, liens, and cost of sale in a disposition of the property in other than a bona fide sale.

The parties have stipulated that the fair market value of the property in question is currently $124,666.66. The present outstanding mortgage is $87,544.73. Aside from the mortgage, there are apparently no outstanding liens and, as there will be no sale of the property, there is no cost of sale to be taken into account. The net value of the property, according to the agreement, is thus $37,121.93. As discussed above, plaintiff will keep the house as his share of the entitlement. Defendant is thus owed the lesser of 38.64% of the net value or 50% of the net value less $25,000. 38.64% of the $37,121.93 net value is $14,-383.91. The net value of $37,121.93 less $25,000.00 equals $12,121.93, fifty percent of which is $6060.96. $6060.96 is less than $14,383.91 and, therefore, represents defendant's entitlement in the property. The relationship of $6060.96 to $37,121.93 is 16.33% which represents defendant's proportionate share in the property. Thus, in order to retain the property, plaintiff must pay to defendant her 16.33% share in the $37,121.93 net value of the property.

However, plaintiff is entitled to offset this amount with a required contribution in an amount equivalent to defendant's share of necessary expenses made by plaintiff for the property. The sum of $22,000.00 (downpayment), $4,265.65 (closing costs), $16,096.10 (mortgage payments to date), $706.68 (homeowner's insurance), and $109.13 (water and sewerage bills) equals $43,177.56, the entire sum subject to contribution. Defendant is required to repay plaintiff her proportionate share of this sum. *Dorf v. Tuscarora Pipe Line Co., Ltd., supra,* 16.33% of $43,177.56 equals $7050.90, which is therefore the amount defendant must repay plaintiff in contribution. This sum is greater by $989.94 than that which plaintiff owes defendant for her share of the property, and therefore defendant owes plaintiff $989.94 in total before her contribution to the property is factored in.[11]

It is not at all inconceivable that this calculation could result in the defendant owing plaintiff money, as this was also the result reached on remand in *Newman v. Chase, supra.* The courts of New Jersey have held that a required contribution becomes not only a lien on the proportionate share of the co-tenant, but also a personal liability of the indebted co-tenant, payable by him even if his proportionate share does not equal the value of the contribution required of him. *Lach v. Weber,* 123 N.J.Eq. 303, 197 A. 417 (Ch.Ct.1938), cited in *Baird v. Moore, supra.*

As discussed above, plaintiff has committed himself to reimbursing defendant for the full cost of her contributions to the joint property, not merely his proportionate share. The sum of defendant's contributions is $1,400.00—consisting of her two checks for $200.00 and for $1,200.00 respectively. $1,400.00 will, therefore, be the amount that in the final reckoning, plaintiff must pay defendant.[12]

The court will enter an appropriate order.

---

**11.** An alternative method of calculation would determine the amount plaintiff owes defendant based on the full present value of the property in evaluating the property in this manner, plaintiff's assumption of the mortgage must be included among the sums subject to contribution. According to this calculus, in order to retain the property plaintiff must pay to defendant her 16.33% share in the $124,666.66 value of the property, which comes to $20,358.07. The sum of the above enumerated items subject to contribution and $67,544.73 (assumption of remaining mortgage) equals $130,722.29, 16.33% of which is $21,346.95. This sum is greater by $988.88 than that which plaintiff would owe defendant for her share of the property, and therefore defendant would owe plaintiff $988.88 in total before her contribution to the property were factored in. The difference between the final figure according to this calculation based on the present value of the house and the calculation based upon net value is due to rounding.

**12.** Plaintiff contends that there is no need for a jury trial as to defendant's counterclaims for assault and battery and personal injury in that those claims are ancillary to the property claims, which are equitable. *Apollo v. Kim Anh Pham,* 192 N.J.Super. 427, 470 A.2d 934 (App. Div.1983). Even if that be true, however, this court is bound by the strong federal interest in jury trials. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566 (3d Cir.1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Defendant's counterclaims are separable from the other claims and not ancillary thereto, in spite of the fact that they might never have been asserted if plaintiff had not instituted the suit to begin with. *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 833, 24 L.Ed.2d 729 (1969), *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).